(No. 15933.—Judgment affirmed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* HOLLIE JONES, Plaintiff in Error.

*Opinion filed April 14, 1924.*

1. CRIMINAL LAW—*whether homicide was in self-defense is a question for jury.* Although there was but one witness to the homicide, aside from the defendant, who has set up self-defense, the question whether the killing was murder or was committed in self-defense is a question for the jury.

2. SAME—*what evidence of threats against third party is competent to show motive in murder trial.* Where the homicide is the result of a quarrel which the defendant and deceased had over a woman with whom they both had illicit relations, the landlady with whom the woman lived may be allowed to testify to statements or threats which she heard the defendant make prior to the homicide, to induce the woman to give him money which she had saved up for the deceased on his return from army service, as such testi-

mony tends to show the relations of the parties and the motive for the killing; but it is error to admit testimony that the defendant took the money by the use of a gun.

3. SAME—*what is not sufficient foundation for secondary evidence of letters.* Where the defendant is charged with the murder of a soldier, whom he shot and killed in an altercation about a woman with whom they both had illicit relations, the mere statement that letters written by the deceased to the woman while he was in the service were in the possession of the government, investigating her illegal claim for the deceased's allotment, is not sufficient foundation for testimony concerning the contents of the letters showing threats to kill the defendant when the deceased returned from service.

4. SAME—*when omission of word "willfully" or "knowingly" from an instruction to disregard false testimony will not cause reversal.* In a murder trial, where there was only one witness to the crime aside from the defendant, who testified in his own behalf, error in instructing the jury to disregard the testimony of any person who they believe "has sworn falsely as to any matter material to the issues," without using the words "willfully and corruptly" or "knowingly," will not cause a reversal where other instructions on the subject adequately protect the rights of the defendant, considering the facts in the case.

WRIT OF ERROR to the Circuit Court of St. Clair county; the Hon. LOUIS BERNREUTER, Judge, presiding.

P. K. JOHNSON, for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, HILMAR C. LINDAUER, State's Attorney, and JAMES B. SEARCY, for the People.

Mr. JUSTICE STONE delivered the opinion of the court:

At the January, 1920, term of the circuit court of St. Clair county plaintiff in error was convicted of the murder of George Burney. Punishment was fixed by the jury at imprisonment for a term of fourteen years. Immediately after the verdict plaintiff in error fled the jurisdiction of the court and was not apprehended until March, 1923. At

the April, 1923, term a motion for a new trial was filed and overruled.

Prior to the date of the homicide plaintiff in error had been living at the home of Louise Shaw, in the city of East St. Louis, with a woman known in the record both as Mrs. Burney and Eva Johnson. The deceased, Burney, was in the government service as a soldier in the world war. Prior to his going into the service he had lived with Eva Johnson, during which time she was apparently known as Mrs. Burney. Burney returned to East St. Louis on a furlough, and on the 9th of March, 1919, came to the home of Louise Shaw to see the Johnson woman. The next day she left the home of Louise Shaw. On the 11th of March she returned and took away some of her clothing. Shortly after she had been in the Shaw home on that day plaintiff in error came to the Shaw house and shortly thereafter the deceased also arrived there. As to what occurred there the record contains only the testimony of Louise Shaw and plaintiff in error. According to the former's testimony, when the deceased came to the door plaintiff in error answered it and returned to her and told her that it was Burney. Upon being told by her to let Burney in, he returned to the door and opened it. Burney proceeded through the house to the kitchen, and plaintiff in error went into the front room, got his revolver and followed Burney into the kitchen. According to the testimony of the Shaw woman there was no argument between the two men until Burney was about to leave and had told her good-by, as he was going back into the service; that plaintiff in error then said to him, "Didn't you say you were going to kill me if you ever got back over?" to which Burney replied, "No; I am too intellect;" that Jones then stepped forward and fired four shots; that Burney, who was leaning against the door, seemed to be slipping to the floor after the first shot; that he reached inside his coat and drew his revolver and fired at plaintiff in error, and as he fell to the floor he fired again,

sending the bullet into the floor; that after he had fallen plaintiff in error stooped over him and snapped his pistol at him again several times but it did not fire. It appears from the evidence that the shot fired by Burney toward plaintiff in error struck him in the upper arm, went through the wall behind him and passing through the next room lodged in the opposite wall. The State also introduced evidence showing that this bullet entered the wall behind plaintiff in error 53½ inches from the floor; that the point where it lodged in the opposite wall of the adjoining room was 59½ inches above the floor, indicating that the ball from the point of entry into the first wall to the point where it lodged in the opposite wall of the adjoining room had taken an upward course.

Louise Shaw was the only witness to the alleged crime. There is nothing in the record to indicate that she had any interest in the outcome of the suit or that she had any unfriendly feeling against plaintiff in error. Plaintiff in error, who testified in his own behalf, does not say that any such feeling existed on her part or that they had ever had any trouble. It appears that he was then, and had been for some months, rooming at her house. It also appears from the testimony of the Shaw woman that plaintiff in error had known that the deceased and the Johnson woman had been living together in a state of adultery and that there had been frequent arguments between her and plaintiff in error about the matter; that on one occasion plaintiff in error drew a gun on the Johnson woman and demanded money which she said she had saved up to buy civilian clothes for the deceased when he came back from the war. It is also apparent from the testimony that while Burney and plaintiff in error were not acquainted, the latter knew that Burney was in the army service and that he was home on a furlough.

Plaintiff in error took the stand and stated that he shot in self-defense; that in the kitchen of the Shaw woman

312—13

Burney at all times kept his hand in his overcoat pocket; that plaintiff in error said to him, "Why do you want to kill me? I wouldn't hurt a hair in your head;" that the Shaw woman made some remark, and as plaintiff in error turned to her, Burney, without warning, pulled his gun from his overcoat pocket and fired at plaintiff in error; that they were about ten feet apart at that time; that the bullet fired by Burney entered the inside of plaintiff in error's arm above his elbow and passed through the arm and a portion of his side and through the wall of the kitchen; that after he was shot plaintiff in error drew his gun and fired at Burney, the bullet striking him in the left breast; that as Burney fell he fired again, the bullet going into the floor; that plaintiff in error shortly thereafter left the house and went to St. Louis; that the next day he came back to the police station and surrendered.

It is contended that the verdict is not supported by the evidence; that the court erred in admitting improper evidence on the part of the People and in excluding competent evidence offered on behalf of the defense; also that the court erred in the instructions.

The evidence detailed here is all that the record contains, aside from that of the post-mortem examination showing cause of death and the testimony of character witnesses for the defendant. Whether the killing was murder or was in self-defense was a question for the jury. They have decided that issue against plaintiff in error. The testimony of the Shaw woman was direct and positive, and, as we have seen, does not appear to have been caused by any ill-feeling on her part toward plaintiff in error. The fact that the bullet fired by Burney took an upward course and struck plaintiff in error above the elbow corroborates the statement of the Shaw woman that Burney fired as he was falling. The record contains no reason for taking the view that the evidence does not sustain the verdict.

It is urged that it was error for the court to permit the State to show that plaintiff in error and the Johnson woman were living at the Shaw home as man and wife; that such testimony was not material and tended to prejudice the jury; also that it was error to permit the Shaw woman to testify that plaintiff in error said to the Johnson woman two days before the shooting, "You won't live with Burney here or nowhere else," and that it was error to permit the State to show by the Shaw woman that plaintiff in error had drawn a gun on the Johnson woman and made her give him money which she said she was saving for Burney. The argument is that such testimony might be material if he was charged with killing the Johnson woman but not on the charge of killing Burney. The testimony of his statements was clearly competent as showing the motive for the killing of Burney. It tends to establish jealousy on the part of plaintiff in error. He and the Johnson woman had been living together prior to the return of the deceased. After Burney went to war plaintiff in error and the Johnson woman began living together in the home of Louise Shaw, and the testimony shows they had sustained that relation until the day prior to the shooting. Under the record in this case the threats of plaintiff in error to the Johnson woman were competent, not as threats against her but as tending to show the relations of the parties and the motive for the killing. It was error to admit testimony that plaintiff in error took money from her by use of a gun, as it tended to establish a separate offense, but we are of the opinion that under the facts as shown by the record such error is not sufficient to reverse the judgment.

The evidence excluded by the court which plaintiff in error contends was competent concerned the contents of certain letters said to have been written by Burney to the Johnson woman, in which it was intimated that he intended to kill plaintiff in error when he got back home. It was

not shown that plaintiff in error made any effort to procure these letters. The only attempt to lay a foundation for introducing secondary proof of their contents was the statement that the government at that time had possession of the letters, apparently under a charge then pending against the Johnson woman of an illegal claim for Burney's allotment. In the absence of a showing of diligence in an endeavor to obtain the letters themselves, sufficient foundation was not laid for secondary evidence as to their contents and such evidence was properly rejected.

It is contended that the twentieth instruction given for the People was erroneous. That instruction is as follows:

"The court further instructs you that if you believe from the evidence that any person who has testified before you as a witness in this case has sworn falsely as to any matter material to the issues in this case, then you are at liberty to disregard the evidence of such witness, except in so far as you may find it corroborated by other credible evidence given before you in this case."

This instruction was erroneous in that it omits the words "willfully and corruptly" or "knowingly" and should not have been given. Considering the instructions as a series, however, we are of opinion that under the facts of this case the error was not sufficient to warrant a reversal of the judgment.

Instruction No. 17 given for the People told the jury that in case plaintiff in error testified, "he at once becomes the same as any other witness, and his credibility is to be tested by and subjected to the same tests as are legally applied to any other witness; and in determining the degree of credibility that shall be accorded to his testimony, the jury have a right to take into consideration the fact that he is interested in the result of his prosecution, as well as his demeanor and conduct upon the witness stand; and the jury are also to take into consideration the fact, if such is

the fact, that he has been contradicted by other witnesses. And the court further instructs the jury that if, after considering all the evidence in this case that the accused has willfully and corruptly testified falsely to any fact material to the issue in this case, they have the right to entirely disregard his testimony, except in so far as his testimony is corroborated by other credible evidence." Instruction No. 12 given on behalf of plaintiff in error was as follows:

"The court instructs the jury that you are the sole judges of the facts in this case, and of the credit to be given to the respective witnesses who have testified. In passing upon the credibility of such witnesses you have a right to take into consideration their prejudice, motives of revenge, if any such have been shown by the evidence, and if you believe from the evidence that any witness or witnesses have knowingly and willfully testified falsely as to any material fact in this case then you are at liberty to disregard the evidence of such witness or witnesses entirely, except in so far as they are corroborated by other credible evidence."

As plaintiff in error and Louise Shaw were the only witnesses to the shooting, it is evident that the instruction as to the jury's duty concerning plaintiff in error's testimony, and general instruction No. 12 given on behalf of plaintiff in error concerning the credibility of witnesses, adequately protected his rights in the matter.

It is apparent from the record that plaintiff in error has had a fair and impartial trial. The jury were justified in returning a verdict of guilty.

There being no reversible error in the record, the judgment of conviction will be affirmed.   *Judgment affirmed.*