## PARENTE v. UNITED STATES.

### ANTINORO v. SAME.

#### Nos. 10384, 10385.

Circuit Court of Appeals, Eighth Circuit.
April 10, 1936.

Rehearing Denied April 30, 1936.

James W. Faris and Joseph B. Catanzaro, both of St. Louis, Mo., for appellants.

Arthur A. Hapke, Asst. U. S. Atty., of St. Louis, Mo. (Harry C. Blanton, U. S. Atty., of Sikeston, Mo., on the brief), for the United States.

Before STONE, SANBORN, and VAN VALKENBURGH, Circuit Judges.

SANBORN, Circuit Judge.

By an indictment, James Greco, Leo Parente, Carmelo Antinoro, and Ercole Ferari were charged with four offenses: (1) Making and fermenting mash fit for distillation and production of alcoholic distilled spirits on premises other than an authorized distillery, on February 18, 1935, at Shrewsbury, St. Louis county, Mo. (26 U. S.C. § 1185, 26 U.S.C.A. § 1185). (2) Possessing an unregistered still at that time and place (26 U.S.C. § 1162, 26 U.S.C.A. § 1162). (3) Carrying on the business of distillers without having given bond (26 U.S.C. § 1184, 26 U.S.C.A. § 1184). (4) Conspiracy to commit the substantive offenses charged as well as to carry on the business of distillers in a dwelling house, to produce distilled spirits in a building which bore no sign as required by law, and to conceal untaxpaid distilled spirits (26 U. S.C. § 1287, 26 U.S.C.A. § 1287) at a place other than a distillery warehouse authorized by law.

Greco entered a plea of guilty. The other defendants stood trial and were each convicted of all offenses charged. The court below granted Ferari a new trial. Antinoro and Parente were sentenced to two years' imprisonment and fined $500 under each of the first three counts of the indictment and to two years' imprisonment under the fourth count, the sentences to

run concurrently. They have appealed, complaining of certain rulings upon evidence and challenging the sufficiency of the evidence to support the verdict of the jury.

■ J. W. Renfro, one of the government officers who took part in the raid on the Greco residence where the distillery and the defendants were found, had testified that the still was in operation and that mash was being cooked with steam from a boiler. He was asked, "What did they use to fire the boiler?" He answered: "Coke." The defendants objected on the ground that there was no evidence that "any men were actually operating the still at that time, and if so, how many and who they were." The answer was allowed to stand. There was no error in this ruling. The pronoun "they" was used impersonally. The boiler was not firing itself. The question called for the kind of fuel which was being used in the distillery.

■ Renfro was also asked this question: "On the afternoon of the 18th day of February, 1935, did the defendant, Antinoro, alias Vincenzo Allo, make any statement as to his name, to you?" The answer was: "We asked him what his name was and he said Vincenzo Allo. At that time I recalled having been shown his picture by the Immigration authorities. I stepped down the hall to their office and had some of the men from the Immigration Office step into our office, and when they appeared and one of them asked what his name was, he said Carmelo Antinoro." The appellants moved to strike the answer as not responsive and as irrelevant. The answer was not irrelevant, and the fact that it was not directly responsive did not make it inadmissible in evidence. Wigmore on Evidence § 785; In re Will of Claus Jahn, 184 Iowa, 416, 165 N.W. 1021, 1023; Hamilton v. People, 29 Mich. 173, 185. The fact that Antinoro used an assumed name was material. Curreri v. Vice (C.C. A.9) 77 F.(2d) 130, 133, Lutch et al. v. United States (C.C.A.9) 73 F.(2d) 840.

■ Two assignments of error, one relating to the admission of photographs of the distilling apparatus, and the other to a sales slip or memorandum covering a large quantity of sugar, yeast, and cans which was found in Antinoro's pocket after the raid, are not argued in the appellants' brief and are therefore waived. Apt et al. v. United States (C.C.A.8) 13 F.(2d) 126, 127; Weare v. United States (C.C.A.8) 1 F.(2d) 617, 618; Braden v. United States, (C.C.A.8) 270 F. 441. But we think these exhibits were clearly admissible.

The government's evidence, so far as it relates to Antinoro, is briefly this: From February 15, 1935, to February 18, 1935, government officers had the Greco residence on Deville avenue, Shrewsbury, Mo., under observation. They detected the odor of fermenting mash coming from the building. At about 7:30 p. m. on February 17th, a dark sedan turned into Deville avenue and proceeded south in front of the Greco house. The headlights were out when it turned into Deville avenue, and remained out as it pulled into the driveway south of the house, stopping beside it. A government officer heard sounds similar to those made by tin cans being loaded into a car. About fifteen minutes later the car left the driveway, the headlights remaining off until it reached the street. The officer followed the car, remaining about a block behind until it made a "boulevard stop" some distance from the Greco house. He drew up close enough to get the license number. He then returned to watch the Greco house, where he remained until 1 o'clock a. m. of February 18th, when he was relieved by another officer. It was observed that during the entire night the lights in the house were turned on and off at frequent intervals. At about 6:30 a. m. of February 18th, a dark sedan drove up in front of the premises, turned off its lights, and pulled in beside the house. A few minutes later, three government officers, who were watching the house from a street back of it, surrounded the house. As one of them approached the side door, it was closed and he heard the bolt click. He knocked on the door, stated that he was a government officer with a search warrant, and demanded admission. He was not admitted; and, after again announcing his identity, he broke in the door. The other officers entered the house also and found therein the appellants (Parente and Antinoro) and Greco and Ferari, all of whom were placed under arrest.

At the time of his arrest and until he was confronted by an immigration officer, Antinoro insisted that his name was "Vincenzo Allo."

In the basement of the house there was found, at the time of the raid, a 300-gallon capacity still in operation, thirteen five-gallon cans of alcohol, another partially filled five-gallon can into which alcohol

from the still was flowing, 5,000 gallons of mash, an empty mash vat, some empty sugar sacks, and a steam boiler under which there was a fire. None of the defendants were in the basement at the time of the raid.

The dark sedan was then standing directly outside a basement window under which the filled cans had been placed. The baseboard of the window showed evidence of wear. The sedan had the same license number as that which was observed by the officer the night before. The back seat was removed, and on the floor was a blanket which bore an imprint similar to that which would be made by a square five-gallon can. Grains of sugar were scattered on the floor of the car. In a trunk at the back of the car was a gallon jug of alcohol in a paper bag. This jug bore no tax stamp. The alcohol in it, upon analysis, was found to be of substantially the same proof as that found in one of the cans in the basement. There was evidence to justify an inference that the jug had been placed in the car after the car arrived at the house. The car belonged to Antinoro, who told the officers that no one else had driven it during the day preceding his arrest.

In Antinoro's pocket was found a sales slip apparently covering purchases of large quantities of sugar, yeast, and cans, all articles which are used in the distillation and distribution of alcohol.

Taking that view of the evidence and the inferences reasonably to be drawn therefrom most favorable to the government [Galatas v. United States (C.C.A.8) 80 F.(2d) 15, 23], it seems to us that the only logical conclusion that can be reached is that Antinoro was aiding Greco in the operation of his distillery by hauling the raw materials to the still and the finished product away from it. This made him an aider and abetter of Greco in the operation of the still and a principal under 18 U.S.C. § 550 (18 U.S.C.A. § 550). Vukich v. United States (C.C.A.9) 28 F.(2d) 666, 668; Borgia v. United States (C.C.A.9) 78 F.(2d) 550, 555.

The evidence also justified his conviction under the conspiracy count of the indictment, since a conspiracy may be deduced from the conduct of the parties and the attending circumstances. Goode et al. v. United States (C.C.A.8) 58 F.(2d) 105, 107; Galatas v. United States (C.C.A.8) 80 F.(2d) 15, 22, 23, supra.

Whether the evidence would justify the conviction of Antinoro under all counts, it is not necessary to determine, since it justifies conviction under enough counts to support the maximum sentence imposed. Whitfield v. Ohio, 56 S.Ct. 532, 80 L.Ed. ——, opinion filed March 2, 1936.

The evidence tending to connect Parente with the offenses charged is so weak that, in our judgment, it did not justify submitting the question of his guilt to the jury. Whether he had any actual part in these illegal activities would, under the evidence, be a matter of speculation and conjecture.

The judgment as to Antinoro is affirmed. The judgment as to Parente is reversed, with directions to grant him a new trial.