## FULBRIGHT v. UNITED STATES.
### No. 10800.

*Circuit Court of Appeals, Eighth Circuit.*
July 13, 1937.

Ira B. Burns, of Kansas City, Mo., for appellant.

Maurice M. Milligan, U. S. Atty., and Sam C. Blair, Asst. U. S. Atty., both of Kansas City, Mo.

Before WOODROUGH, THOMAS, and FARIS, Circuit Judges.

THOMAS, Circuit Judge.

The appellant was indicted, tried and convicted on two counts charging conspiracy with Juanita Sparger to violate section 246 of title 18, U.S.C.A. Criminal Code § 141. Count one charged that the object of the conspiracy was to harbor and conceal Clarence Sparger, for whose arrest a federal process had been issued on September 6, 1935, based upon an indictment charging Sparger with robbery of the First National Bank of Neosho, Mo. The object of the conspiracy charged in the second count was to harbor and conceal John Langan, for whose arrest a federal warrant had been issued on September 1, 1935, upon a charge of transporting a stolen motor vehicle in interstate commerce in violation of the Dyer Act (18 U.S.C.A. § 408).

The conspiracy and the overt acts are alleged to have been committed at the same time and place in each count, viz., that the appellant and Juanita Sparger, the wife of Clarence Sparger, knew that the above warrants had been issued and that they conspired to harbor and conceal Sparger and Langan so as to prevent their discovery and arrest; and that in order to effect such conspiracy the appellant during the period from March 24, 1936, until April 21, 1936, had furnished food, drink, bedclothes, and medicine to them and permitted them to conceal themselves in her tavern and adjoining cabin.

At the close of all the testimony appellant moved for a directed verdict of acquittal on both counts of the indictment on the ground that there was no proof that appellant had knowledge that Sparger and Langan were fugitives for whose arrest federal process had previously been issued. The court overruled the motion, and his order is assigned as error. There are other assignments of error and other questions argued in the briefs, but, in the view we take of the record upon the question of proof of knowledge, a discussion of other alleged errors is not essential to a decision.

Upon the assignment of error under consideration two questions arise: (1) Under a charge of conspiracy to violate the statute, Is knowledge of the defendant that a federal warrant has been issued for the arrest of the person concealed an ingredient of the crime? and (2) If so, does the testimony in this case support the verdict?

The substantive crime, which the indictment charges it was the object of the conspiracy to commit, is defined in the statute (18 U.S.C.A. § 246) as follows: "Whoever * * * shall harbor or conceal any person for whose arrest a warrant or process has been so issued, so as to prevent his discovery and arrest, after notice or knowledge of the fact that a warrant or process has been issued for the apprehension of such person, shall be fined not more than $1,000, or imprisoned not more than six months, or both."

Thus knowledge that a warrant has been issued is made an essential element of the substantive crime; and it must adhere in a charge of conspiracy to commit that crime.

It is true that the conspiracy statute "* * * does, not in terms require that the contemplated offense shall of itself be a criminal offense." United States v. Hutto, 256 U.S. 524, 528, 41 S.Ct. 541, 543, 65 L.Ed. 1073. But it is necessary that the act intended to be effected, in order to support a charge of conspiracy, must in some manner be prohibited by an act of Congress in the interest of the public policy of the United States, such as when the prohibited act is punishable by a penalty, United States v.

Hutto, supra; Winner v. United States (C. C.A.7) 33 F.(2d) 507, or is a contempt made punishable by the Judicial Code. Taylor v. United States (C.C.A.7) 2 F.(2d) 444. If the act is not prohibited by Congress, it is not unlawful to conspire to do it. Fain v. United States (C.C.A.8) 209 F. 525, 531; United States v. Biggs, 211 U.S. 507, 521, 29 S.Ct. 181, 53 L.Ed. 305; Gebardi v. United States, 287 U.S. 112, 123, 53 S.Ct. 35, 77 L.Ed. 206, 84 A.L.R. 370. There are no common-law crimes against the United States. United States v. Eaton, 144 U.S. 677, 687, 12 S.Ct. 764, 36 L.Ed. 591.

It has been held in a prosecution of a conspiracy to defraud a national bank that it was immaterial that the defendant knew it to be such a bank. Reynolds v. United States (C.C.A.9) 67 F.(2d) 216, 217. The situation is different here where the substantive crime requires that the convicted defendant have knowledge that a federal warrant has been issued. In Pettibone v. United States, 148 U.S. 197, 13 S.Ct. 542, 37 L.Ed. 419 it was held that the defendants could not be convicted of a conspiracy to obstruct the administration of justice in a federal court as the indictment failed to allege that they knew that the particular justice was there being administered. The court said at pages 203, 207 of 148 U.S., 13 S.Ct. 542, 545, 37 L.Ed. 419:

"This indictment does not, in terms, aver that it was the purpose of the conspiracy to violate the injunction referred to, or to impede or obstruct the due administration of justice in the circuit court; but it states, as a legal conclusion from the previous allegations, that the defendants conspired so to obstruct and impede. * * *

"Undoubtedly it is a condition of penal laws that ignorance of them constitutes no defense to an indictment for their violation, but that rule has no application here. The obstruction of the due administration of justice in any court of the United States, corruptly or by threats or force, is indeed made criminal, but such obstruction can only arise when justice is being administered. Unless that fact exists the statutory offense cannot be committed, and while, with knowledge or notice of that fact, the intent to offend accompanies obstructive action, without such knowledge or notice the evil intent is lacking. It is enough if the thing is done which the statute forbids, provided the situation invokes the protection of the law, and the accused is chargeable with knowledge or notice of the situation; but not otherwise.

"It is insisted however, that the evil intent is to be found, not in the intent to violate the United States statute, but in the intent to commit an unlawful act, in the doing of which justice was in fact obstructed, and that, therefore, the intent to proceed in the obstruction of justice must be supplied by a fiction of law. But the specific intent to violate the statute must exist to justify a conviction, and, this being so, the doctrine that there may be a transfer of intent in regard to crimes flowing from general malevolence has no applicability."

■■ It is immaterial, of course, whether the defect exists in the indictment or in the proof. The object of the conspiracy charged in the indictment is limited by the statute defining the substantive crime. To establish the illegal conspiracy therefore it was incumbent upon the government to prove that the conspirators had "notice and knowledge" that federal warrants had been issued for the arrest of Sparger and Langan. General malevolence is not enough if the specific knowledge required by the statute is lacking. Pettibone v. United States, supra; Piquett v. United States (C. C.A.) 81 F.(2d) 75.

The second question, therefore, must be considered that is, whether or not the evidence is sufficient to support a finding that appellant had notice or knowledge that a federal warrant had been issued for the apprehension of Langan or Sparger at the time alleged. Appellant was convicted and sentenced upon both counts. Since the government claims that the fact of knowledge is a legitimate inference to be drawn from the evidence as a whole, this issue requires a brief summary of the testimony.

■ On March 24, 1936, and for about five years prior thereto, appellant was engaged in operating a tavern at Hickman Mills near Kansas City, Mo. In connection with her business she had one tourist cabin for rent to the public. On the night of March 24th she rented the cabin to Langan and Sparger, who were accompanied by Sparger's wife, the codefendant in this case. The appellant was personally acquainted with Langan, whom she knew under the name of Lauderman. The Spargers were introduced to her under the name of Davis. Langan and the Spargers stayed with appellant until April 21, 1936, when the premises were raided by

federal officers, and Langan, the two Spargers and appellant were arrested.

During the stay of Langan and the Spargers at appellant's place they occupied the cabin except occasionally when it was rented to tourists. At such times they slept in the tavern. Sometimes the two men were away for a few days at a time. Juanita Sparger worked for appellant in the capacity of waitress and scrubwoman in payment for their meals, some of which were eaten in the cabin and some at the table in the dining room of the cabin.

On one occasion state officers came to the tavern to take an old man employed by appellant to a hospital. Before their arrival appellant said she would rather Langan and Sparger would leave while the officers were there, and they left for two or three days.

There was evidence also that Langan was wanted by officers in the state of Kansas for assaulting a state officer in an altercation in which Langan's wife was killed, and that appellant knew this fact. Prior to the trial Juanita Sparger pleaded guilty to the indictment, and she was used as a witness for the government against appellant. She testified to a conversation between appellant and Langan, overheard by her, in which appellant told Langan he should go to South America; that he was "hot," and that in two or three years they would forget about it. She was then asked and answered:

"Q. She (the appellant) didn't know what kind of hot it was? A. She knew that his wife was killed and that he shot this sheriff in Kansas.

"Q. That was all she knew? A. That was enough—to know that the police is looking for anybody.

"Q. That was all she knew? A. I don't know what she knew. I do know she knew that much for we had talked about it."

Mrs. Sparger further testified that she herself knew that her husband was wanted for bank robbery.

■ There is no evidence in the record that either Mrs. Sparger or the appellant had specific knowledge that either Langan or Sparger had violated any federal law or that federal warrants had been issued for their arrest. Knowledge that the fugitives were evading officers in general or that a state government had issued warrants for their arrest is immaterial. Such acts are beyond the purview of the statute. The federal statute is not directed against violators of the criminal laws of the states. Nei-

ther concealing nor conspiring to conceal fugitives from state officers seeking to arrest such fugitives under warrants issued by the state constitutes a crime under section 246 or the conspiracy statute (18 U.S. C.A. § 88).

■ The appellant testified in her own behalf, and the government insists that her failure to explain the extent of her knowledge of Sparger's history is a fact from which an inference of guilt may be drawn. This argument misconceives the applicable rule of law. It was the duty of the government to prove knowledge on the part of the appellant, and not the duty of appellant to prove that she had no such knowledge. Parente v. United States (C.C.A.8) 82 F. (2d) 722, 725. Upon the record appellant's actual knowledge with respect to both Sparger and Langan remains a matter of speculation and conjecture. In such a case judgment as a matter of law must of necessity go against the party upon whom rests the burden of proof.

■ The government bases its case in part upon contradictory statements of the appellant concerning the length of stay of the fugitives at the cottage, her contact with them, and details surrounding the capture as establishing guilty knowledge. But contradictory statements as to those facts, while perhaps destroying her own defense, Wigmore on Evidence, vol. 1, p. 355; State v. Citius, 331 Mo. 605, 56 S.W.(2d) 72, 76; State v. Cummings (Mo.App.) 257 S.W. 184, 185; People v. Jones, 312 Ill. 190, 143 N.E. 479, would not of themselves establish knowledge on the part of appellant that federal process had been issued for the fugitives. Wilson v. United States, 162 U.S. 613, 620, 16 S.Ct. 895, 40 L.Ed. 1090, upon which the government relies, was a case in which there was otherwise substantial evidence that the defendant had committed the crime in question. The most that the government can gain from the defendant's contradictory statements under the doctrine of Wilson v. United States, supra, is proof of a general malevolence; and, as pointed out in Pettibone v. United States, supra, that is not sufficient in a case of this character.

■ It may be that, as counsel for the government argues, all the circumstances shown in evidence tend to show that appellant had a corrupted conscience, and that in harboring Langan and Sparger she entertained a sense of guilt. The circumstances warranting such inferences, however, fall

short of establishing or of tending to establish that such sense of guilt was connected with knowledge that federal warrants had been issued for the arrest of the criminals. Want of proof of the corpus delicti itself cannot be supplied by proof of a guilty conscience. Every circumstance pointed out is consistent with knowledge that Langan and Sparger were criminals, but it is equally consistent with appellant's ignorance of outstanding warrants for their arrest. Such circumstantial evidence will not sustain the burden of proof cast upon the government in a criminal case, where a citizen's liberty is at stake. Langer v. United States (C.C. 8) 76 F.(2d) 817, 827.

The observation that it will usually be impossible under the statute to prove knowledge by any available evidence is without merit. If that be true, it is not the fault of the courts. The remedy, if one is available and desirable, lies with Congress.

For the reasons stated, the judgment is reversed and the case remanded for a new trial.