**LITTLE v. UNITED STATES.***

Nos. 10886–10889.

Circuit Court of Appeals, Eighth Circuit.
Nov. 29, 1937.

Rehearing Denied Dec. 17, 1937.

William G. Boatright, of Kansas City, Mo. (I. J. Ringolsky, Harry L. Jacobs, Ludwick Graves, James Daleo, Ringolsky, Boatright & Jacobs, and Johnson, Lucas, Landon, Graves & Fane, all of Kansas City, Mo., on the brief), for appellants.

Thomas A. Costolow, Asst. U. S. Atty., of Kansas City, Mo. (Maurice M. Milligan, U. S. Atty., and Randall Wilson, Richard K. Phelps, and Sam C. Blair, Asst. U. S. Attys., all of Kansas City, Mo., on the brief), for appellee.

Before GARDNER, SANBORN, and THOMAS, Circuit Judges.

THOMAS, Circuit Judge.

This is the third of the Kansas City, Mo., election cases tried and appealed. The first was that of Walker et al. v. United States (C.C.A.) 93 F.2d 383 (Nos. 10863-4), and the second was that of Luteran et al. v. United States (C.C.A.) 93 F.2d 395 (Nos. 10865-9). The appeals in both these cases have been determined by this court and the opinions have been filed.

In the instant case the indictment is in two counts. The first count charges a conspiracy in violation of section 19 of the Criminal Code (title 18 U.S.C.A. § 51) to injure and oppress citizens in their right to vote and to have their votes counted as cast for presidential electors for the state of Missouri. The second count is similar to the first except that it refers to votes cast for candidates for the office of Representative in Congress.

The offense is charged to have been committed at the November 3, 1936, general election in the 19th precinct of the 12th ward in Kansas City, Mo.

Eight defendants were named in the indictment. They were John T. Little, a Democratic precinct election judge; Alice M. Froeschl, a Democratic election judge; James E. Maxey, a Republican election judge; Lena T. Green, a Republican election judge; Forest C. Holman, a Democratic clerk; Ruth Hogendorn, a Republican clerk; Joseph Hobdy and Gilbert Stevens, Democratic precinct captains. At the commencement of the trial Lena T. Green and Ruth Hogendorn withdrew their pleas of not guilty and entered pleas of nolo con-

tendere, and at the conclusion of the trial they were placed on probation for one year without sentence. The other six defendants stood trial and were each found guilty on both counts of the indictment. The defendants Froeschl and Hobdy were sentenced on each count to serve three months in jail and to pay a fine of $12.50; and they were likewise placed on probation. The following sentences of imprisonment and fines were imposed upon the other four defendants: Stevens, three years and $12.50 on each count; Little, two years and $12.50 on each count; Maxey, two years and $12.50 on each count; and Holman, one year and one day and $12.50 on each count. The sentences to serve in prison were all to run concurrently. From the judgments so entered, Little, Stevens, Maxey, and Holman took separate appeals, all of which appeals, by order of court, have been submitted together.

The evidence at the trial discloses that the polling place of the 19th precinct of the 12th ward was in the study room of a church called "The Church of God." The room was about 50 feet long and 15 to 18 feet wide. The tables used by the election officials were about the center of the room. There were chairs for everyone. A pulpit stood in the east end of the room about 10 feet from the wall and about the same distance from the tables. From a vestibule at the outside entrance steps led to the basement of the building. There was another room about the center of the building in the basement. To reach the basement room from the election room one passed down a hall and through a boiler room and kitchen.

In addition to the defendants, there were present at the polling place most of election day Thomas H. Cummins, a Republican precinct captain, and Mrs. Helen Hayworth, a Republican worker.

Upon the opening of the polls appellant Stevens directed the arrangement of the election officials and the election paraphernalia. Shortly thereafter Stevens and Cummins had a conversation in the vestibule at the front entrance in which Stevens showed Cummins a piece of paper with the names of the candidates on it and a statement of the number of votes to be credited to each candidate at the end of the day. It showed that the Republican candidates were to receive only 24 votes each. Cummins protested and told Stevens that he did not like the way it was being carried out and that if that were done there would be trouble.

Stevens replied: "Well, if you have any objections, why, there have been people known to be taken for a ride for objecting to such things as that."

During the day appellant Little took ballots out of the ballot box, put them in his inside coat pocket and later gave them to Stevens, who took them into the basement room, changed them, brought them back to Little, and they were put back into the ballot box without protest from the election officials. The changes were made by erasing the crosses under the Republican emblem and marking crosses under the Democratic emblem. Changing ballots in the basement room was observed going on several times during the day. Stevens, Little, and Hobdy were engaged in this work. A man of dark complexion, not an official, assisted in changing ballots and returning them to the ballot box occasionally.

Unvoted ballots, which were supplied to the polling place in pads, were detached from the pad at several different times during the day and taken to the basement room where the changing of ballots was carried on.

The appellant Stevens had the tally sheets back of the pulpit about 8 o'clock in the morning and had a conversation with Holman and Cummins about them. Under the direction of Stevens, Holman and Cummins proceeded to mark them in accordance with the numbers to be accredited to each candidate as shown on the paper to which Stevens had called the attention of Cummins earlier in the morning.

During the day the election officials wrote many more names in the poll books than the number of people who actually voted. Names were properly written in such books only as voters presented themselves and voted. The added names written in were taken by the officials from cards furnished by Stevens.

The government called about fifty voters who testified that they voted straight Republican ballots, making no erasures or alterations on their ballots whatever.

After the polls closed, the ballots were removed from the ballot box and straightened out, but not counted. All the officials signed the various papers required to be filled out and signed by the election laws of Missouri. Among other things, they certified that they had counted the ballots and that the numbers accredited to each candidate were true and correct. Their returns showed that 26 votes were credited to the Republican candidates for presidential electors and the Republican candidate for representative in Congress and 480 for the opposing Democratic candidates.

Motions for directed verdicts, to require the government to elect on which count of the indictment it would go to the jury and for a mistrial based upon the examination of witnesses were filed by each of the appellants and overruled by the court.

As already indicated, this case is one of a group of five Kansas City election cases appealed to this court and submitted at the same term, and in which there were four common assignments of error. With the approval of the court counsel for both parties filed separate briefs covering the four questions common to all the cases. These questions were considered by the court and determined in connection with the first case appealed, namely Nos. 10,863 and 10,864, Walker et al. v. United States. The decision upon all four of such questions was adverse to the contentions of the appellants, and that decision is controlling here.

In all these election cases the indictments are identical in form and substantially so in substance. There is also a striking resemblance in the facts in evidence and in the alleged errors in the several cases. The second appeal already decided by this court was that of Luteran et al. v. United States, Nos. 10,865-9. In addition to the four questions referred to supra common to the whole group of election cases there are certain others common to the Walker and Luteran Cases which are repeated in this case. They are: (1) The insufficiency of the evidence, (2) the admission of the testimony of grand jurors, (3) evidence of stuffing the ballot box, and (4) receiving nolo contendere pleas in the presence of the jury. Another, the admission of interviews with government agents with appellants after the indictments were returned and before the trial, was decided in the Luteran Case. The legal questions involved in all these assignments of error are the same. They have all been determined in the Walker and Luteran Cases and no useful purpose would be served in repeating the discussions here. They are all decided contrary to the claims of the appellants, with one exception hereafter to be noted.

There are other specifications of error, however, which are peculiar to the instant

case, and which require our consideration. They are: (1) Refusal of the court to require the witness Martin, a government investigator, to exhibit his notes of interviews with appellants, such notes having been used by him to refresh his memory when on the witness stand; (2) refusal to require the government to produce written statements made by the witness Hogendorn and referred to in her testimony; (3) admission of testimony concerning X marks made by voters; (4) admission of evidence of fingerprints of appellants; (5) cross-examination of appellant Maxey; (6) cross-examination of character witness Huselton; (7) cross-examination of the witness Froeschl; (8) errors in charging the jury; and (9) denial of appellants' motions to require the government to elect on which count of the indictment it would go to the jury.

The first of these particular specifications of error relates only to appellant Maxey. C. J. Martin, a special agent of the Federal Bureau of Investigation, testified for the government with respect to two interviews which he had with Maxey, the first before the indictment was returned and the second thereafter. On direct examination he said:

"As to telling everything he (Maxey) said relative to the matter on the first interview, I can do that better by refreshing my memory from notes, if I may. (Referring to memorandum). At that time he told me that he had observed no irregularities and apparently all election officials had taken part in entering the figures in the poll books and in marking—the said counting tally sheets. * * * I had the second conversation on March 2d, after the indictment. Then he said that the only thing he had done was to count the school bond amendment ballots."

On cross-examination the following questions, answers, and rulings occurred:

"I refreshed my memory a moment ago from some notes. I can't let you have those notes that I refreshed my memory from.

"Mr. Jacobs: Inasmuch as they have been brought by the witness into this examination and referred to by him, voluntarily, at the instance of the Government, I ask the Court to direct the witness to allow me to have those notes from which he refreshed his memory.

"Mr. Wilson: Now, if your Honor please, those notes are records of the Fed-

eral Bureau of Investigation, which are confidential in their nature and not subject to disclosure by or through the Court, as we understand the rule, and we insist that the request should be denied.

"Mr. Jacobs: You divulged the contents of them.

"The Court: Are they mingled with other inquiries? Is each investigation, each interview complete within itself?

"The Witness: I don't have complete notes, if that is what the Court means. It is just what I happened to write down as being pertinent to my investigation.

"The Court: The notes involved in the interview with any one witness, could that be placed in the hands of counsel without disclosing any other matters?

"The Witness: I think so. Of course the notes that I took from one witness furnished information concerning the activities of others; they would be referred to in that note from one particular person.

"Mr. Wilson: They are taken as a part of a record.

"The Court: Did the direct examination cover all the matters that you had in your notes?

"The Witness: No, sir, only a very small part of it, just one question is contained in there.

"The Court: The other matters in your notes concerning the interview, are they of a confidential nature, that is, do they belong to your Department in that way?

"The Witness: Yes sir, they do.

"The Court: The request will be denied.

"Mr. Jacobs: Exception. (To which ruling and action of the court the defendants, and each of them, at the time duly excepted and still except.)

" * * * Maxey was the one I said I refreshed my memory on from my notes a moment ago, Mr. Maxey, the first conversation. I will take a look at them and see whether or not they are complete in themselves. (Referring to notes.)

"There was also reference to other defendants in these notes on Mr. Maxey.

"As to whether I can give you the portion relating to the conversation alone, do you want me to read it just as I have it? It is on one piece of paper, the conversation

alone, is on one piece of paper, and what he told me, of course, that is all on one piece of paper.

"Q. Now, it appearing the conversation is all on one piece of paper—

"The Court: Is there any reason why counsel should not see that? Does it disclose any other matters you may have of a secret or confidential nature?

"The Witness: Except that it is a confidential memorandum, your Honor.

"The Court: You have given testimony concerning its contents here, have you?

"The Witness: No, only one small phase of it. There are certain phases of it I haven't said a word about.

"Mr. Wilson: We renew the objection.

"The Court: Objection sustained.

"Mr. Jacobs: Exception. (To which ruling and action of the court the defendants, and each of them, at the time duly excepted and still except.)"

Counsel for the government do not undertake to defend the grounds of the objections urged by them before the trial court. They say frankly in their brief in this court:

"Of course, we do not take the position that a cross-examiner is not entitled to see the notes from which a witness refreshes his memory while on the witness stand. Certainly the cross-examiner is entitled to see them. * * *

"The better practice would certainly have been to allow counsel to see all of the notes, and we say this unhesitatingly. * * *"

■ It is a generally accepted rule of evidence that the defendant in a criminal case or his counsel has the right, upon proper request or demand, to inspect and use, for purposes of cross-examination, any paper or memorandum which is used by a witness on direct examination for the purpose of refreshing his present recollection. Lennon v. United States, 20 F.2d 490, 493 (C.C.A.8); Taylor v. United States, 19 F.2d 813, 818 (C.C.A.8); Morris v. United States, 149 F. 123, 126 (C.C.A.5). It was pointed out by Judge Stone in his concurring opinion in the Taylor Case, supra, that a conviction will not be reversed for a denial of this right if it appears clearly on the record that no prejudice resulted from the error.

In that case the memorandum was used by the witness on direct examination for the purpose only of refreshing her recollection as to whether the circumstance to which she testified occurred on the 21st or on the 22d day of the month; and the exact date being immaterial the denial of the right was held to be without prejudice.

■ In the present case it cannot be said that the testimony given by the witness, after refreshing his memory by reference to his notes, was immaterial. The purpose for which the testimony was offered and admitted was ostensibly to show a consciousness of guilt on the part of Maxey in that his alleged statements to Martin contradicted the testimony of government witnesses in reference to irregularities at the polling place on election day. One of the effects of the testimony, however, was to discredit Maxey's veracity before he had had an opportunity to testify in his own behalf. After refreshing his memory, Martin testified that in the first conversation, which occurred before the indictment was returned, Maxey stated that he had observed no irregularities and that, so far as he had observed, all election officials had taken part in entering the names in the poll books and in marking tally sheets. He further testified that in the second conversation, after the indictment had been returned, Maxey said that the only thing he had done was to count the school bond ballots. Had Maxey's counsel been able to see the complete notes, a part only of which the witness revealed, he might have been able to show on cross-examination wherein Maxey's statements were actually consistent with each other, and with the testimony which, later in the trial, Maxey gave in his own behalf. He having been denied this legal right, the government was permitted to show, without proper cross-examination, that Maxey, conscious of his guilt, was lying to a government agent to protect himself from punishment for his crime.

Counsel for the government argue that it is impossible to say from the record whether the witness refreshed his memory upon a disputed fact or only on an undisputed fact, and that, therefore, the record fails to show that appellant was prejudiced. This argument is a misapplication of section 269 of the Judicial Code, as amended (28 U.S.C. § 391, 28 U.S.C.A. § 391), which provides that in an appellate proceeding judgment shall be given "without regard to technical errors, defects, or

exceptions which do not affect the substantial rights of the parties." In Williams v. Great Southern Lumber Co., 277 U.S. 19, 26, 48 S.Ct. 417, 419, 72 L.Ed. 761, the Supreme Court has declared:

"Since the passage of this act, as well as before, an error which relates, not to merely formal or technical matters, but to the substantial rights of the parties 'is to be held a ground for reversal, unless it appears from the whole record that it was harmless and did not prejudice the rights of the complaining party.' United States v. River Rouge Imp. Co., 269 U.S. 411, 421, 46 S.Ct. 144, 147, 148, 70 L.Ed. 339."

In Goldstein v. United States, 63 F.2d 609, 614, this court said:

"Since the enactment of section 391, title 28 U.S.C. (28 U.S.C.A. § 391), an error is not presumed to be prejudicial. The burden of showing prejudice is upon the appellant, and he is not entitled to the reversal of a judgment or conviction unless it appears that he has been denied some substantial right and has been thereby prevented from having a fair trial."

■ Here appellant was denied his undoubted right properly to cross-examine the witness. The evidence as to his guilt was conflicting. He testified in his own behalf to facts which, if credited and believed by the jury, would establish his innocence. Under these circumstances, it would seem that the appellant had acquitted himself of the burden of pointing out in the record the denial of a substantial right. Rich v. United States, 271 F. 566, 570 (C.C.A.8); Haywood et al. v. United States, 268 F. 795 (C. C.A.7). See, also, Berger v. United States, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314; Fina v. United States, 46 F.2d 643 (C.C.A. 10). In view of the conflict in the testimony we are "upon an examination of the entire record" unable to say that the evidence of Maxey's guilt was so overwhelming as to make the error complained of harmless. Berger v. United States, supra, 295 U.S. 78, at page 82, 55 S.Ct. 629, 630, 79 L.Ed. 1314. Any doubt as to the duty of this court to reverse for this error alone is removed when the failure to require the memorandum to be produced, which is the subject of error, is added to and considered in connection with the error in the cross-examination of Maxey discussed in a succeeding paragraph.

■ Another specification of error relates to the testimony of the witness Hogendorn wherein on cross-examination she mentioned two written statements which she had given agents of the Federal Bureau of Investigation. Appellants then requested the court to require appellee to produce both statements. The request was refused, and the ruling of the court thereon is the basis of complaint here. The contention is without merit, however. The situation is entirely different from the refusal of the court considered supra wherein counsel was denied the right to inspect the notes used by witness Martin to refresh his memory. Here the statements were not brought into court nor used by the witness while on the stand for any purpose. The appellants were not therefore entitled to them. Lennon v. United States, supra.

■ The claim that prejudicial error resulted from the admission of testimony concerning certain cross marks made by voters can not be sustained. Two government investigators testified that a number of government exhibits consisted of 25 papers each bearing three X marks made at their request by voters picked at random from those who had been put on the stand as witnesses, but who had not identified the marks in their testimony. They were objected to as hearsay. The objection should have been sustained. But the exhibits were not shown to the jury. They were procured for purposes of demonstration by an expert witness and were not so used. There could have been no prejudice resulting from the error. It was purely technical and not substantial. Similarly, appellants complain of the introduction of the fingerprints of the defendants, without any subsequent showing that these fingerprints were found on the ballots or election paraphernalia. The criticism is that this was another "play to the jury." It would be dangerous indeed for an appellate court to assume whenever a line of proof is begun and not completed that counsel is trying to plant an improper suspicion in the mind of the jurymen, and that such tactics are prejudicial. The error, if any, was harmless.

Complaint is made of the cross-examination of the appellant Maxey. After the question, "Have you ever been convicted of a felony?" had been answered in the negative, the United States Attorney asked Maxey, "Did you steal an automobile?" The objection of appellant's counsel to this question was overruled and Maxey answered, "I borrowed a friend of mine's." A little later the United States Attorney returned to that subject in this manner:

"Q. (By Mr. Milligan) What did you mean? A. Well, a friend of mine's car, I had been to his house occasionally, been friendly ever since we had been going to school.

"Q. So that is what you mean when you said you borrowed his car? A. That is right. I wasn't convicted on it."

 That kind of cross-examination is error under the decisions of this court. "Acts of misconduct, not resulting in conviction of a crime, are not the proper subject of cross-examination to impeach a witness." Lennon v. United States, 20 F.2d 490, 494 (C.C.A.8); Glover v. United States, 147 F. 426, 8 Ann.Cas. 1184 (C.C.A. 8); Havener v. United States, 15 F.2d 503 (C.C.A.8); Gideon v. United States, 52 F. 2d 427 (C.C.A. 8); Hartzell v. United States, 72 F.2d 569 (C.C.A.8). And when indulged in the government will not be heard to say that such cross-examination is not prejudicial error. In Salerno v. United States, 61 F.2d 419, 424 (C.C.A.8), Judge Sanborn, speaking of similar misconduct, said:

"When, in the prosecution of a defendant, counsel for the government indulges in unfair and improper cross-examination, the only purpose of which is to degrade the defendant and to prejudice the jury against him, the government, upon appeal, will not ordinarily be heard to say that the methods which were used did not have the effect which they were obviously intended to have."

The manner in which the United States Attorney cross-examined Maxey as to other matters is also cited as error. While the record here shows that the cross-examination was not the model of fairness and dignity which was to be expected, the conduct of it cannot be compared with the kind of abuse that was condemned in Berger v. United States, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314. There is here no ground for reversal upon that score.

Appellant Little testified in his own behalf and for the other defendants in the case. He then introduced Charles A. Huselton as a character witness. Huselton after qualifying testified that Little's reputation for being a law-abiding citizen was good. Later he was recalled for further cross-examination by the government, and was questioned and answered as follows:

"By Mr. Milligan:

"Q. You testified Mr. John T. Little's reputation as a law-abiding citizen was good? A. Yes, sir.

"Q. Haven't you heard rumors that he has been arrested in Kansas City for carrying concealed weapons twice, for frequenting gambling games, and once for common assault? A. No, I never did.

"Q. If you had heard those, would that alter your testimony? A. Naturally it would."

No objection to the questions was made at the time the questions were asked and answered, but at the close of the entire case the appellants moved for a mistrial on the ground that the questions were of a prejudicial character.

 The method of cross-examining a character witness has been considered in at least three recent cases by this court: Sloan v. United States, 31 F.2d 902, 906; Spalitto v. United States, 39 F.2d 782, 785; and Pittman v. United States, 42 F.2d 793, 795. Had the United States Attorney ended his cross-examination with the inquiry, beginning, "Haven't you heard rumors," etc.? he would have been within the rule of the Spalitto Case supra; but when he proceeded with his hypothetical question based upon the assumption that those rumors were facts he came within the practice condemned in the Sloan and Pittman Cases supra. Such practice cannot be approved by this court. If permitted, it would sanction the destruction of a "spotless reputation" by innuendo. Sloan v. United States, supra. This is not saying, however, that in this case the denial of the motion to declare a mistrial on this ground was reversible error. In our opinion it was one of those technical errors upon the record covered by section 269 of the Judicial Code (28 U.S.C.A. § 391). The offense was not repeated and no request for an instruction upon it was made by appellant Little.

 The cross-examination of the witness Froeschl complained of by appellants was not commendable. She was a defendant, however, and was convicted with the appellants; but she does not appeal. The misconduct of the United States Attorney in this regard was not such that the appellants may take advantage of it as prejudicial to their rights.

Several specifications of error assail the charge to the jury. The court informed the

jury that a conspiracy may be entered into tacitly, that is by "silent agreement." He then gave an illustration of such a conspir-acy. The record upon this alleged error is the same in substance as the record upon which complaint was based in the Luteran Case supra. What is said in that opinion is applicable here. There was no error at this point. The court commented at length upon the evidence. It is charged that such comment was unfair and argumentative, and that it placed undue emphasis upon the testimony of the government witnesses. Complaint is also made of the modifications and additions made to requested instructions. A careful examination of these alleged errors in connection with the instructions as a whole is convincing that they are without merit. The court's definition of reasonable doubt was approved by this court in the case of Mansfield v. United States, 76 F.2d 224, 230, and we are not disposed to reconsider that decision.

Finally, it it contended that the court erred in refusing to require the government to elect on which of the two counts it would go to the jury. This raises the question of the validity of the indictment. In Walker et al. v. United States, supra, the court, in passing upon the questions common to the five cases in this group of cases, held that count one does not state a federal offense. It was error to submit it to the jury. So far as the prison sentences are involved, no prejudice resulted from such error because the sentences upon the two counts were for the same period in each appeal and they were made to run concurrently. Taran v. United States, 88 F.2d 54, 59 (C.C.A.8); Aczel v. United States, 232 F. 652 (C.C.A.7); Roberts v. United States, 283 F. 960 (C.C.A.8); United States v. Trenton Potteries, 273 U.S. 392, 401, 47 S.Ct. 377, 381, 71 L.Ed. 700, 50 A.L.R. 989. The case was properly submitted on count 2. The judgments on count 2 may stand, in so far as this specification of error is involved.

For the errors pointed out on the cross-examination of the witness Martin and the appellant Maxey, the judgment appealed from in No. 10,888, James E. Maxey v. United States of America, is reversed, and the case is remanded for a new trial on count two of the indictment. In the other three appeals the judgments and sentences upon count 2 of the indictment are affirmed, and the court below is directed to remit the fines imposed under count 1.

*Writ of certiorari denied 58 S.Ct. 643, 82 L.Ed. ——.