**O'SHEA v. UNITED STATES.**
No. 7620.

Circuit Court of Appeals, Sixth Circuit.
Dec. 7, 1937.

John R. Watkins, of Detroit, Mich. (David Polasky, of Detroit, Mich., on the brief), for appellant.

Frank G. Schemanske, of Detroit, Mich. (John C. Lehr, of Detroit, Mich., on the brief), for the United States.

Before HICKS and ALLEN, Circuit Judges, and NEVIN, District Judge.

HICKS, Circuit Judge.

From April, 1933, to January 14, 1936, appellant was assistant vice president of the National Bank of Detroit (a member of the Chicago Federal Reserve Bank), and from the last-mentioned date until March 15, 1936, he was vice president. He was convicted upon all counts (eighteen in number) of an indictment charging him with misapplication of the funds of the bank. The moneys misapplied were on deposit to the credit of the "City of Detroit Trust Fund" and totalled $241,950.

In count 1 the misapplication is alleged to have been accomplished by the use of a certified check in the sum of $32,000 carrying the forged indorsement of W. J. Curran, comptroller of the city of Detroit, and the indorsement of H. M. Tyler, an employee in the office of the comptroller.

In count 2 the misapplication is alleged to have been accomplished by the use of a check in the sum of $14,000 drawn upon the trust fund account and carrying the forged signature of W. J. Curran, comptroller, as payee, the forged indorsement of

W. J. Curran, comptroller, and the genuine indorsement of H. M. Tyler.

In the remaining counts the misapplication is alleged to have been accomplished as in count 2, the only difference being in the dates and amounts of the checks.

No question is raised as to the sufficiency of the evidence to support the verdict upon the first count, and the judgment thereon must be affirmed unless there was prejudicial error in the introduction of testimony.

It is urged that appellant was entitled to a directed verdict upon counts 2 to 18, because there was no competent evidence that the signatures of W. J. Curran, comptroller, as payee, and the indorsements of W. J. Curran, comptroller, upon the reverse side of the checks were forgeries as alleged. If this position is not sustained and if there is no reversible error in the introduction of other testimony, the judgment upon these counts must likewise be affirmed.

■ The checks described in counts 2 to 18 were not introduced in evidence. Appellee supplied their contents by secondary evidence upon the ground that they were not procurable. Appellant's point is that appellee did not make a sufficient showing of its inability to produce the checks to justify the introduction of the secondary evidence. This was a matter to be determined by the judge in the exercise of his discretion, and by "discretion" of course is meant judicial discretion.

These checks, together with the bank statements reflecting their payment, were delivered either personally or by messenger to H. M. Tyler, by direction of appellant, who had general supervision over the trust fund account. They were important links in the chain of circumstances tending to implicate both appellant and Tyler in the losses from the Detroit Trust Fund deposits. When the losses were disclosed, Tyler killed himself. There is a reasonable inference that he destroyed the checks— at least they were never found. In due course they should have been found in the check files of the city treasurer's office. A thorough but ineffectual search was made through all the check files, desks, and records of that office where they might possibly have been.

■ On March 13, 1936, the day following Tyler's death, a search of his desk and room in the comptroller's office was instituted and was not completed for several days. Canceled checks on the trust fund account were looked for especially but none were found. Upon such showing there was no error in the admission of secondary evidence of the contents of the checks described in counts 2 to 18. The admission of this secondary evidence, before the court finally concluded that it was the best evidence the nature of the case would admit of, cannot be regarded as prejudicial.

■ Upon the hypothesis that the loss of the checks had not been sufficiently established, appellant insists that the introduction of certain records of the bank, to wit, tellers' blotters (Exhibits 39-45, 50-59) and permanent ledger account sheets (Exhibits 66-68, 70-78, 80-85) as secondary evidence of their contents, was error. But these blotters and ledger sheets were original records of the bank made in due course of business. The blotters were identified by the tellers who made them and the ledger sheets by the officer who had them in charge. These records were competent as such, the blotters as tending to show that the checks had been cashed, and the ledger sheets that the face amounts of the checks had been withdrawn from the trust fund deposit. See Act No. 15, Pub.Acts Mich.1935; Johnson v. U. S., 89 F.2d 913, 915 (C.C.A.6); American Surety Co. v. Pauly, 72 F. 470, 478 (C.C.A.2).

For the same reason, permanent ledger sheet Exhibit 69 was admissible. It was an original record and relevant to the issues under count 1.

■ It is urged that certain carbon copies of interoffice memoranda (Exhibits 3, 4, 5, 20, 21, 22, 23 and 24) were inadmissible because the showing that the originals were not procurable was insufficient. Treating these carbons as copies, the originals were addressed and delivered to appellant personally or left upon his desk. The Fifth Amendment protected him against any demand upon him in the presence of the jury to produce the originals [McKnight v. U. S., 115 F. 972, 976 (C.C.A.6)], and the copies were therefore the best available evidence of the contents of the originals. To support their introduction, evidence was introduced of a diligent search not only of appellant's desk but of the records and files of the bank. There was therefore no error in the introduction of the copies, even treated as secondary evidence.

■ But carbon copies may not necessarily be treated as secondary. They are not copied from the originals, but they and the originals are made by one mechanical operation. The carbons are nothing more, nor less, than duplicate originals. Wharton's Criminal Evidence, vol. 1 (10th Ed.) p. 385.

Mercedes Dimmer testified that she was employed by appellant as secretary from some time in 1930 until March, 1932, when she resigned; that in December, 1934, she opened a brokerage account at the request of appellant; that she operated from her home; that shortly after this date she opened two other accounts; that appellant first gave her $2,000 which she kept in a safety deposit box; that she made one purchase toward the end of December, 1934; one hundred and ten or one hundred and fifteen purchases in 1935 and around twenty-five purchases in 1936, the last one being made on March 10, 1936; that during this period appellant gave her between $90,000 and $100,000 always in cash; that, depending upon the activity of the markets, he would bring the money to her house at intervals and in varying amounts; that she kept the money in her safety deposit box until she used it; that the highest amount he brought at any one time was probably $4,000; that appellant asked her not to come to the bank except as a customer; that during the fifteen months the accounts were operated she received $1,650 in salary, $13,500 in profits, and still had an interest in the undivided profits.

On February 16, 1932, appellant owed Henry Whiting $26,875, which he paid with money obtained from H. M. Tyler.

■ Appellant contends that the testimony of Miss Dimmer was inadmissible because it established no connection between the moneys furnished her and those lost by the bank. The case was one for circumstantial evidence. Evidence tending to show that appellant was destitute as late as February, 1932, and that he secretively furnished large amounts of money to Miss Dimmer from December, 1934, until March, 1936, substantially the same period during which the misapplications took place, is relevant. Such evidence tends to show that appellant was in unauthorized possession of the bank's money. Wigmore on Ev. (2d Ed.) vol. 1, § 154; People v. Connolly, 253 N.Y. 330, 340, 171 N.E. 393; Commonwealth v. Coyne, 228 Mass. 269, 117 N.E. 337, 3 A.L.R. 1209; Commonwealth v. Mulrey, 170 Mass. 103, 110, 49 N.E. 91.

Williams v. United States, 168 U.S. 382, 18 S.Ct. 92, 42 L.Ed. 509, relied upon by appellant, carries little analogy. The indictment in that case was for a violation of the Chinese Exclusion Acts and in no wise involved a misapplication of bank funds.

Appellee introduced evidence tending to show that on February 16, 1932, appellant paid his debt of $26,875 to Whiting by a cashier's check which he purchased from the Guardian National Bank of Commerce of which he was then vice president and for which he gave a check upon the same bank signed by Harry M. Tyler, receiver, and drawn upon Tyler's account as receiver in the case of City of Detroit v. Alex F. Lewis. We do not go into this transaction in detail. It is sufficient to say that it carries a strong inference that appellant knew he was the beneficiary of funds wrongfully misapplied by Tyler. Tyler had no right of course to use receiver's funds for such purpose. Appellant insists that evidence touching this transaction was wholly unrelated to the offenses charged in the indictment and therefore inadmissible. Appellant was not a witness in his own behalf but we gather his defense was that, assuming Tyler's guilt, which is clear, his connection with Tyler was not intentionally dishonest but was at most the result of mere negligence or oversight.

■ The evidence touching this transaction of February 16, 1932, was relevant, not only as tending to refute appellant's claim of an innocent motive but to establish a fraudulent scheme between appellant and Tyler to defraud the bank.

■ For the same reason the evidence tending to show appellant's connection with the transaction of August 29, 1935, by which $106,792.76 of "City of Detroit Trust Funds" were unlawfully applied to settle the claim of the city of Detroit for the defalcations of Tyler as receiver in the case of the City of Detroit v. Alex. F. Lewis, was admissible.

The bank's records indicate that on August 28, 1935, Tyler as receiver for the Alex. F. Lewis estate, had on deposit $1,841.60 only; that on the next day he withdrew this balance in the form of a cashier's check on the savings department of the bank and payable to himself; that on August 30 he made a requisition for a cashier's check on the bank for $108,634.36, the amount of his shortage as receiver,

which requisition bears the initials of appellant; that to purchase this check he indorsed to the bank the check for $1841.60, his indorsement carrying appellant's initials, and for the balance he gave a check upon the bank's commercial account for $106,792.76; that thereupon appellant issued a cashier's check for $108,634.36, the total amount of Tyler's default, payable to Albert E. Cobo, city treasurer, which was deposited in the Commonwealth-Commercial State Bank, to the credit of Cobo, city treasurer; that the amount of the check for $106,792.76 was withdrawn from the City of Detroit Trust Fund account in the bank, over which appellant had supervision. After a diligent search for this check, appellee was unable to produce it. The same showing was made with reference to it as was made in regard to appellee's inability to produce the checks described in counts 2 to 18.

We think this evidence was admissible for its bearing upon the question as to whether there was concert of action between appellant and Tyler in this transaction and as tending to overthrow appellant's claim of innocence or good faith in his relations with Tyler. Shea v. U. S., 236 F. 97, 102 (C.C.A.6); Grant v. U. S., 268 F. 443, 448 (C.C.A.6); Worden v. U. S., 204 F. 1, 5 (C.C.A.6); Johnson et al. v. U. S., 82 F.2d 500, 505 (C.C.A.6).

Finally, there is no merit in the contention that appellant should have had a directed verdict upon counts 2 to 18 upon the ground that there was no competent evidence that the signature and indorsement of W. J. Curran, comptroller, upon the checks described in these counts were forgeries as alleged. These checks, as hereinbefore shown, were not available and secondary evidence thereof was necessary. It was shown that a certain type or form of check (Exhibit 38) was used. Curran testified that he neither signed nor authorized any one to sign any such check. The objection is that this testimony amounted to evidence that Curran's signatures on the checks by which the misapplications were accomplished were forgeries, and that, in the absence of the checks themselves, he should not be permitted so to testify. But we are not dealing with an indictment for forgery, and we need not determine what the applicable rule of law would be in such case. We think that Curran's testimony, in connection with other substantial evidence, indicating that appellant knew not only that Curran's signature was unauthorized, but if authorized, was insufficient of itself to justify withdrawals from the trust fund account, was relevant and important.

The judgment of the District Court is affirmed.