## NEAL v. UNITED STATES
### No. 11177.

Circuit Court of Appeals, Eighth Circuit.
April 3, 1939.

Harry S. Swensen, of Minneapolis, Minn. (Eugene A. Rerat and John Ott, both of Minneapolis, Minn., on the brief), for appellant.

Victor E. Anderson, U. S. Atty., of St. Paul, Minn. (Linus J. Hammond, Asst. U. S. Atty., of St. Paul, Minn., on the brief), for the United States.

Before STONE, WOODROUGH, and THOMAS, Circuit Judges.

THOMAS, Circuit Judge.

The appellant William Squire Neal, hereinafter called defendant, was indicted, tried and convicted in the court below upon both counts of an indictment containing two counts, and he appeals.

The first count of the indictment charged defendant with being an accessory after the fact to a felony committed by John L. Neal; and the second count charged misprision of the same felony committed by John L. Neal. The defendant was sentenced to serve in a penitentiary for two years on each count, the sentences to run concurrently and not consecutively.

Before trial the defendant interposed a demurrer to count one of the indictment, which was overruled. At the close of the evidence he moved for a directed verdict upon both counts on the ground of insufficiency of evidence to support a verdict of guilty, which motion was overruled.

On this appeal the defendant urges that the trial court erred (1) in overruling his demurrer to count one of the indictment, (2) in overruling his motion for a directed verdict on both counts, (3) in the admission of certain evidence over his objection, (4) in permitting misconduct of the prosecuting attorney in his argument to the jury, and (5) in giving certain instructions to the jury.

Since the sentences run concurrently, if the defendant was properly convicted upon either count of the indictment, there can not be a reversal even if there were reversible error on the trial of one of the

WOODROUGH, Circuit Judge, dissenting.

counts. The defendant in that situation is not prejudiced by the sentence on the count in which the conviction is tainted with error. Roberts v. United States, 8 Cir., 96 F.2d 39, 40; Little v. United States, 8 Cir., 93 F.2d 401, 409; Taran v. United States, 8 Cir., 88 F.2d 54, 59; Maddelin v. United States, 7 Cir., 46 F.2d 266; United States v. Trenton Potteries Co., 273 U.S. 392, 47 S.Ct. 377, 71 L.Ed. 700, 50 A.L.R. 989.

The alleged error most seriously pressed upon our attention, and the one involving the greatest difficulty, relates to the sufficiency of the evidence to support a conviction upon either count. If this assignment of error be sustained the court erred in overruling defendant's motion for a directed verdict and the judgment must be reversed. In that event it will be unnecessary to consider the other alleged errors. This question requires a consideration of the indictment and a review of the government's evidence.

The defendant and John Neal are brothers. At all times material to this case they lived in Minneapolis, Minnesota. The defendant was married and operated an undertaking establishment. His brother John was a bachelor and lived in defendant's home. John had been employed as a clerk or messenger in the office of the treasurer of the Soo Line railroad at Minneapolis for 32 years prior to December 28, 1937. In February, 1938, John was indicted in the United States District Court of Minnesota and charged in ten counts with stealing and carrying away various sums of money from the First National Bank and Trust Company of Minneapolis. He pleaded guilty on five counts and was sentenced to 15 years in a penitentiary. The indictment was predicated upon the amendment of August 24, 1937, to section 2(a) of the Act of May 18, 1934, 48 Stat. 783, 12 U.S.C. § 588b, 12 U.S.C. A. § 588b. The original statute made bank robbery a crime. The pertinent part of the amendment added: "whoever shall take and carry away, with intent to steal or purloin, any property or money or any other thing of value exceeding $50 belonging to, or in the care, custody, control, management, or possession of any bank, shall be fined not more than $5,000 or imprisoned not more than ten years, or both."

The counts of the indictment to which John Neal pleaded guilty and on which he was sentenced charged him with stealing and carrying away from the bank $97.50 on December 27, 1937; $97.50 on December 24, 1937; $97.50 on December 23, 1937; $95 on December 22, 1937; and $97.50 on December 21, 1937.

The crimes of accessory after the fact and misprision of felony being dependent or subsidiary offenses the indictment upon which the defendant was tried alleged two crimes in each count. John L. Neal is referred to as principal, or the one who committed the primary felony, and the defendant is charged with the dependent offenses. In each count the felony attributed to John L. Neal is that between August 24, 1937 (the date of the amendment to the bank robbery statute supra), and December 28, 1937, he stole and carried away from the possession of the First National Bank and Trust Company of Minneapolis many thousands of dollars.

In the first count the crime of which the defendant is accused is that he knowing that the principal had committed and completed the felony above described became on January 7, 1938, an accessory after the fact thereto in that he aided and assisted the principal in secreting the fruits and proceeds of the felony by clandestinely placing $5,903 of the stolen money in a golf bag in his living quarters, thus suppressing important evidence, to the end that the principal might escape punishment.

In the second count it is alleged that on or about January 7, 1938, the defendant committed the crime of misprision of felony in that with full knowledge of the felony committed by John L. Neal he concealed and failed to disclose and make known such felony as soon as might be to some one of the judges of the United States District Court of Minnesota or to the Attorney General of the United States or to the United States Attorney or to other persons in civil authority. It is further charged that the defendant took two affirmative steps to conceal the crime committed by his brother John: first, he concealed $5,903 of the stolen money in a golf bag at his living quarters; and, second, he altered and expunged from the account books of the Neal Funeral Home operated by him entries showing the investment therein by John L. Neal of the stolen moneys.

To warrant a conviction by the jury on the first count of the indictment the

burden was upon the government to establish beyond a reasonable doubt: (1) That John L. Neal, the principal, had committed and completed the felony charged, that is, that between August 24 and December 28, 1937, he had unlawfully taken and carried away from the First National Bank and Trust Company of Minneapolis many thousands of dollars; (2) that the defendant had knowledge that the principal had committed the felony; and (3) that having such knowledge, defendant aided and assisted the principal to escape punishment by suppressing important evidence against him in that he concealed $5,903 which constituted a large part of the fruits and proceeds of the offense.

To sustain a conviction on count two for misprision of felony it was incumbent upon the government to prove beyond a reasonable doubt (1) that John L. Neal, the principal, had committed and completed the felony alleged prior to January 7, 1938; (2) that the defendant had full knowledge of that fact; (3) that he failed to notify the authorities; and (4) that he took two affirmative steps to conceal the crime of the principal, viz., (a) he concealed $5903 of the stolen money in a golf bag, and (b) he knowingly altered and expunged from the books of account of the Neal Funeral Home entries showing the investment of John L. Neal therein, which money so invested was a part of the stolen money.

In brief the evidence introduced by the government to prove the crime of the principal John L. Neal tended to establish the following facts:

John L. Neal, as a clerk or messenger in the office of the Treasurer of the Soo Line railroad company, received a salary of $140 a month. Under its system of doing business the railroad company had its station agents send their daily collections directly to the bank for deposit to the credit of the company, with the exception of rent money which they were instructed to send directly to the treasurer of the company at Minneapolis. The agent before sending the money made a deposit slip in quadruplicate one of which he retained. The money, the original and one copy of the deposit slip were sent directly to the bank and one copy was sent to the auditor of the railroad company. The envelopes containing the deposits were delivered every morning to the teller in the "railroad cage" at the bank. John L. Neal

called at the teller's cage about 10:30 in the morning and obtained the extra copy of the deposit slip and took it to the office of the treasurer of the railroad company where he made a record of receipt by the bank of the deposit after which he turned the deposit slip over to the auditor as notice that the money had been received by the bank. The auditor then returned one copy of the slip to the agent to serve as a receipt to him for the deposit.

In many instances the agents sent rent collections with the deposit to the bank instead of sending such items directly to the treasurer of the company. The rent item was separately enclosed and had an identifying mark on it indicating that it was not for deposit but was for the treasurer of the company. The railroad teller at the bank would turn over the rent items to John L. Neal for delivery to the treasurer when John called at the bank in the morning.

For a period of approximately seven years immediately preceding December 27, 1937, John L. Neal made a practice of telling the bank teller when he made his usual call that of the general deposit received from a particular agent a part thereof, for instance $97.50, was rent money and that it should be turned over to him for delivery to the treasurer. The statement was false, but the teller relying on it would turn over the amount demanded. The money turned over was not taken from the funds remitted by the particular agent designated, but from money generally on deposit at the cage. The original deposit slip held by the bank would then be changed accordingly but not the copy which Neal took to the treasurer's office. The money so received by him he kept. He kept an account of the items thus abstracted and covered up his offense by false entries and forged deposit slips. Neal's record showed that the amount of money thus taken by him over the seven year period amounted to $118,280. The bank's record showed the amount to be $82,872.50. During the entire year 1937 the amount taken was about $53,000, and after August 24, 1937, approximately $18,000 or $19,000.

John L. Neal had no express authority to withdraw money from the bank, and the teller at the bank had no instructions to turn the money over to him. The defendant claims that both John L. Neal and the bank teller had implied authority to handle the moneys the way they did, but the evi-

dence was not such as to require the jury so to find.

The evidence on the trial of the defendant tended to show that he lived with his family upstairs over his funeral parlor in Minneapolis. His brother John lived with him. In 1935 he had his business incorporated under the name Neal Funeral Home, Inc. He was president, his wife vice president, John L. Neal treasurer, and an employee, Otis Allen, secretary. The defendant treated the business as his own. He paid no salaries to the officers and he handled the money himself. The obligations of the business were in his name, and he owned the home. His income in 1935 was $2,385.46, and in 1936, $2,739.15. Yet he had property in excess of the amount usually owned by one of such moderate income. John furnished the groceries for the family amounting to $75 to $80 a week. He also made investments in the business. During 1935, 1936, and 1937 he contributed to the business the sum of $12,970.71 in various amounts and at various times, and he withdrew during the same period the sum of $3,150, leaving a net balance of $9,820.71.

John L. Neal disappeared on the night of December 27, 1937. About 2:00 a. m. on the morning of December 28, 1937, the defendant found on the premises $5,903 in paper currency in an old iron box. He removed the money and placed it in an old laundry bag which he placed in his closet. When questioned by officers he admitted finding only $15 of John's money.

On the evening of December 29, 1937, the defendant called the bookkeeper for the funeral home and employed him to delete John L. Neal's name from the books. The bookkeeper rewrote about 30 sheets having John L. Neal's name thereon, omitting the name and substituting other explanations for the items. The rewritten sheets and the originals were turned over to defendant's secretary Allen on January 31, 1938, but the bookkeeper then took the originals and kept them until February 17, 1938.

The evidence discloses that the defendant knew where John L. Neal was in hiding following December 27, 1937, but although examined frequently by federal investigators denied all knowledge of his whereabouts until in January, 1938. On January 5, 1938, he directed an officer to John's hiding place, and John was arrested. On January 6, the defendant told the officers that he had found $5,903 in an old iron box in John's room and had placed it in a golf bag upstairs in his room.

■ As applicable to both counts we think there was substantial evidence to support the conclusion of the jury that John L. Neal, the principal, was guilty of the felony charged against him, and that the defendant had knowledge of that fact as alleged in the indictment. There is no claim that the defendant believed or was informed that his brother John earned or had by any honest means obtained the large sums of money which he contributed to the funeral home or from which he paid the family grocery bills. The close relationship between the two brothers precluded ignorance of each others' resources. His conduct on and after December 28, 1937, and his concealing information of John's whereabouts were proper subjects for the consideration of the jury, and all the circumstances taken together virtually compelled a finding of guilty knowledge. Keliher v. United States, 1 Cir., 193 F. 8, 9; McDonald v. United States, 8 Cir., 89 F.2d 128.

The serious question under count one of the indictment is whether there is substantial evidence to support the charge that the defendant aided and assisted the principal to escape punishment by suppressing evidence against him by concealing the $5,903 found in the old iron box in a golf bag. The charge in the indictment is that the defendant concealed $5,903 which constituted a large part of the fruits and proceeds of the offense of the principal and was important evidence against him. The proof does not show when the $5,903 was placed in the old iron box by John. John's salary was only $140 a month. Over a period of seven years he stole approximately $118,000. During 1937 he stole $53,000 of this sum, and after August 24th of that year he had taken approximately $18,000 of the amount. The money stolen prior to August 24, 1937, did not constitute a federal offense, and the stealing of money prior to that date is not charged to be a crime in the indictment. The defendant's testimony is that when he opened the iron box on December 28, 1937, the paper money contained in it appeared to be old and was covered with a thick layer of dust. Early in January, 1938, the money was turned over to the officers, and they do not deny defendant's testimony with reference to its condition. The mon-

ey consisted of 813 one-dollar bills and $5,090 of five, ten, twenty and fifty dollar bills.

The proof clearly does not tend to show that the $5,903 was a part of the "fruits or proceeds of the offense" of the principal, that is, that it was money stolen by John after rather than before August 24, 1937. Evidence which is consistent with each of two hypotheses proves neither, Prudential Insurance Company v. King, 8 Cir., 101 F.2d 990, decided February 25, 1939; and when all of the substantial evidence is as consistent with innocence as it is with guilt, it is the duty of the appellate court to reverse a conviction, Shama v. United States, 8 Cir., 94 F.2d 1, 4; Fulbright v. United States, 8 Cir., 91 F.2d 210; Haning v. United States, 8 Cir., 21 F.2d 508; Wright v. United States, 8 Cir., 227 F. 855. Nor is there any presumption in the absence of proof that the $5,903 was a part of the money stolen after August 24, 1937, rather than that it was a part of the money stolen before that date. United States F. & G. Co. v. Des Moines Nat. Bank, 8 Cir., 145 F. 273, 279.

The government does not deny that the allegations and the proof upon this point do not correspond, but counsel say the variance is not material. Berger v. United States, 295 U.S. 78, 82, 55 S.Ct. 629, 630, 79 L.Ed. 1314, is relied upon. The test of a material variance is there stated to be "(1) that the accused shall be definitely informed as to the charges against him, so that he may be enabled to present his defense and not be taken by surprise by the evidence offered at the trial; and (2) that he may be protected against another prosecution for the same offense." We are of the opinion that the variance in this instance is material and prejudicial. The indictment informed the defendant that the government would prove that the $5,903 was a part of that stolen after August 24, 1937, and not that it might be a part of that taken sometime during the preceding seven years. The defense, had it been alleged that the $5,903 was a part of the money taken before that date, would be altogether different from the defense if it were alleged that it was taken afterwards. Even though the description were unnecessary in the indictment it devolved upon the government to prove it as laid. Potter v. United States, 155 U.S. 438, 445, 15 S.Ct. 144, 39 L.Ed. 214.

It is insisted further that the indictment charges that the $5,903 found in John's room after his disappearance on December 28, 1937, constituted evidence admissible against the principal, had he been tried for the felony charged against him, and that it is therefore admissible against the defendant. This theory would regard the allegation that the money was the fruit of the offense as surplusage. It fails also to distinguish between admissibility of evidence against the principal and evidence which constitutes substantial proof of the dependent offense.

This argument is sufficiently plausible and important, however, to make it expedient to examine the question of whether or not, were the record on the trial of the principal the same as the record in this case, the $5,903 found in the iron box would be relevant evidence against him.

The general rule in favor of the admission of such evidence is stated thus in 36 C.J. 894: "When money has been stolen and the evidence against the accused is largely circumstantial, it has been held proper to admit in evidence * * * as showing a possible motive for the crime. * * * The possession by accused of money immediately or shortly after the theft * * * and for stronger reason is such evidence admissible when there is proof both of the impecuniosity of accused before the larceny and the possession by him of considerable money for a person in his circumstances immediately afterward, as such a sudden accession of wealth by defendant, contemporaneous with the larceny of money, tends strongly to connect him with the crime. To contradict this evidence accused may show that he had money just prior to the theft. * * *"

In short the evidence of possession of a large sum of money by the defendant immediately after a theft raises a presumption of fact that the money found is a part of the stolen money and that the defendant was connected with the theft. Under this general rule the foundation for the introduction of such evidence includes proof of (1) the "impecuniosity" of the defendant just before the theft, (2) and the "sudden accession" of wealth (3) contemporaneous with the theft. O'Shea v. United States, 6 Cir., 93 F.2d 169; People v. Connolly, 253 N.Y. 330, 171 N.E. 393; Davis v. Commonwealth, 154 Ky. 774, 159 S.W. 607; Perrin v. State, 81 Wis. 135, 50

N.W. 516; 17 R.C.L. p. 68. The rule laid down by the Supreme Court adds the further burden upon the government of showing some necessary or natural connection between the sums in defendant's possession and those he is charged with taking. Williams v. United States, 168 U.S. 382, 396, 397, 18 S.Ct. 92, 97, 42 L.Ed. 509. In the cited case the defendant was convicted under an indictment charging extortion. Evidence was introduced under the general rule stated above showing that during the period of about three months when the extortions were taking place the defendant deposited in the bank $4750 although his salary was only $140 a month. In reversing the judgment of conviction, in connection with the statement of the rule quoted above, the court observed that "no sum so deposited corresponded in amount with the sums which he was charged with having extorted." This case is criticized by Prof. Wigmore in 1 Evidence § 154, where he states the rule thus: "Another mode, however, of making the fact of money-possession relevant is to show its *sudden possession,* i.e. to show that before the time of taking the person was without money, while immediately after that time he had a great deal; this reduces the hypothesis to such as involve sudden acquisition, and a dishonest acquisition thus becomes a natural and prominent hypothesis. On such conditions the possession of unidentified money becomes relevant."

Upon the trial the government introduced facts in evidence in this case which destroy the presumption of fact and render the finding of the $5,903 irrelevant. While it was shown that the principal, John L. Neal, was receiving a salary of only $140 a month it was also shown that during the preceding seven years he had in addition to his salary received approximately $100,000, and that during the 9 months preceding August 24, 1937, his income had been approximately $200 a day. Here was no sudden acquisition of wealth after August 24th. It is true his large income prior to that date was the result of stealing, but such stealing was not a federal crime; and his possession of $5,903 after August 24th, without proof of acquisition after that date, would not raise a presumption that its acquisition was unlawful, or that it was a part of the fruits of his federal offense.

As the record stood at the close of the evidence there was no relevant evidence to support a verdict of guilty on count one of the indictment. The defendant's motion as to this count should have been sustained.

The second count of the indictment charges an offense under Title 18 U.S.C.A. § 251 (Cr.Code § 146), which provides that: "Whoever, having knowledge of the actual commission of the crime of murder, or other felony cognizable by the courts of the United States, conceals and does not as soon as may be disclose and make known the same to some one of the judges or other persons in civil or military authority under the United States, shall be fined not more than $500, or imprisoned not more than three years, or both."

The elements of the offense under the statute are two: There must be (1) a concealment of something such as suppression of the evidence or other positive act and (2) a failure to disclose. Proof of one of the elements only, and not of both, is not sufficient to support a conviction. Bratton v. United States, 10 Cir., 73 F.2d 795, 797; United States v. Farrar, D.C.Mass., 38 F.2d 515, 517. The sufficiency of the charge is not assailed, but it is claimed that defendant did not fail to disclose "as soon as may be"; that he did in fact as shown by the government's evidence disclose all that he knew on the fourth, fifth and sixth of January, 1938. The evidence also shows that he made no disclosures until after he had been frightened into doing so by the federal officers who were investigating the crime. He might have given them such information on the 28th of December, 1937, but instead of doing so he "threw dust in their eyes" when they interviewed him and gave them misleading information. Under the evidence it was a question for the jury to determine whether he made the disclosure "as soon as may be" to satisfy the requirements of the law.

We next consider the charge in the indictment that the defendant did two affirmative acts to "conceal" the crime of the principal. The first act charged was that he concealed $5,903 in a golf bag, "which moneys unlawfully and feloniously had been taken and carried away by the said John L. Neal, with intent to steal the same, from the possession of" the bank; and, second, that he knowingly altered and expunged from the books of account of the Neal Funeral Home entries showing the investment of moneys by John L. Neal,

which moneys had unlawfully been taken and carried away from the possession of the bank by John with intent to steal the same.

The first alleged act, that the defendant concealed $5,903 of the money stolen by John L. Neal between August 24 and December 28, 1937, is not, as shown above, supported by the evidence.

Neither is the second alleged affirmative act of the defendant to conceal the crime of John L. Neal supported by substantial evidence. That charge is that the defendant expunged from the books of the funeral home the entries showing John L. Neal's investment of the stolen moneys in that business. There are only two entries in the books showing investments of John L. Neal in the funeral business after August 24, 1937. One of these shows that on October 15, 1937, he "advanced" $125 and the other that on October 19th he "advanced" the further sum of $100. There is. no evidence whatever connecting these sums with the money unlawfully taken and carried away from the bank; and the amount is not sufficient to raise a presumption of fact that they were not honest savings from· his salary.

█ The basis in the evidence upon which the charge is founded is that the defendant did on December 29, 1937, instruct the bookkeeper to delete John L. Neal's name from the entries in the books. His name or his initials appeared in connection with certain entries on about 30 different sheets of the books. The bookkeeper took these sheets home with him and copied them substituting for the name or initials of John L. Neal other explanations such as "administration fees" or "W. Squire Neal." He returned them to the office of the funeral home on December 31, 1937, and delivered them to Otis Allen. He then took the original sheets home with him without the defendant's knowledge and made a second copy for himself. The originals were returned to the office on February 17, 1938, and placed in the books, where they remained and were produced at the trial unaltered. The defendant did not direct that the original sheets be destroyed, although the bookkeeper suggested that they be burned. An intent to conceal from the government, if

such intent existed, that is not carried out is not an offense under the statute.

The government argues that for a few days after December 27, 1937, the defendant aided in concealing John L. Neal, and that he is therefore guilty of misprision of felony. The evidence shows that he did know where John was in hiding and may have advised with him about escaping; but failure to inform the officers is not sufficient alone to constitute a crime under the statute. Bratton v. United States, supra.

The government having failed to produce any competent evidence to sustain one of the essential elements of the offense charged in count two of the indictment the motion for a directed verdict should have been sustained as to that count also.

Because the evidence fails to support the charges in each count of the indictment the judgment is reversed and the case remanded with instructions to grant a new trial.

WOODROUGH, Circuit Judge (dissenting).

It seems to me that the ·defendant was properly indicted, fairly tried and justly convicted under the accessory statute. Section 551, Title 18 U.S.C.A., Criminal Code, Section 333.

It was clearly proved that defendant's brother John had been stealing small sums of cash from the Minneapolis bank day by day over a course of years and putting it in his pocket. Most of it he spent, but when he was caught he still had $5,903 hidden under his bed in a tin box. The defendant being cognizant of his brother's felony took the money from under the bed and secreted it in a golf bag in order to conceal that clue to his brother's crime. That made the defendant an accessory after the fact, as I see it.[1] True, the federal statute does not define "accessory," but the meaning is long settled in common law. Any act knowingly done to aid a felon to cheat the law either of his person or the fruits of his crime constitutes the actor an accessory. The gist of the offense is the intent to cheat the law, the acts may·vary infinitely. Where the felony of the principal is larceny of money I see no reason to restrict the accessory

---

[1] Blackstone Com. Vol. 2 IV, 37: "Any assistance whatever given to a felon to hinder his being apprehended, tried or suffering punishment makes the assistor an accessory."

statute to the receiving of identified stolen money knowing it to have been stolen. Any act to cheat the law may suffice where the gist—the intent—is proven.

The indictment in this case was very carefully drawn to accord exactly with the established facts. The pleader knew that the identity of every dollar John stole was lost as soon as John stole it, because John immediately put his stealings in his pockets that were already well filled and none of it was marked. That being so, and the fact considered that John always spent many times what he earned, I can think of no better way to describe the fund or any part of it that remained in John's possession than to call it the "fruits or proceeds" of his stealing. That is what it was in ordinary acceptation and those are the appropriate descriptive words applied in the indictment to the ill-gotten gains that John hid under the bed and the defendant feloniously concealed from the law.

It is argued that the $5,903 cash under John's bed was not "important evidence" against him as alleged in the indictment, but it seems to me that it was. True, John confessed his stealings but the criminal law requires more than confession. The money hidden under the bed considered with the records and the confessions tended to establish the corpus delicti of John's offense. It would in the mind of a layman, and I think it would on a criminal trial. Not because it was suddenly acquired or unaccounted for wealth in John's possession, but because the presence of the money there under the bed corroborated and tended to bear out the amazing story of his stealings and what he had done with the loot. Nearly all of the great sum of $110,000 which John had stolen was gone without trace. There was nothing to show for it but some figures on paper. But the cash under the bed was tangible to the touch and visible to the eye. It was of the corpus delicti whether the state prosecuted for the stealings before the amendment to the federal bank robbery act or the federal government for those committed thereafter. In either case the relevant proof would be that over and above what John had earned and spent there was a remnant hidden under the bed not honestly earned but "fruits and proceeds" of his crime. His restoration of it after he was caught was merely by written document. But the money itself in a pile of coins and bills was "important evidence" for the jury.

I dissent because I think the conclusion unduly restricts the broad salutary accessory statute against helping thieves cheat the law. In the particular case I think there are extenuating circumstances but that guilt was proven.

