302 So.2d 806 (1974)
Douglas J. HOLLAND, Petitioner,
v.
STATE of Florida, Respondent.
No. 74-778.
District Court of Appeal of Florida, Second District.
November 8, 1974.
Allen P. Allweiss, Allweiss & Anderson, St. Petersburg, for petitioner.
James T. Russell, State Atty., and William B. Blackwood, Asst. State Atty., Clearwater, for respondent.
McNULTY, Chief Judge.
Petitioner seeks review by common law certiorari of an order of the Circuit Court *807 of Pinellas County, sitting in its appellate capacity, which reversed the county court's dismissal of an indictment charging petitioner with the crime of "misprision of felony." We grant certiorari and reinstate the order quashing the indictment.[1]
As far as we know or are able to determine, this is the first case in Florida involving the crime of misprision of felony. Such offense is not proscribed by the statutes of Florida, but was a crime at common law. The circuit court order now under review, as did the county court order before it, recognized it as such common law offense and held it to be a "crime under the laws of the State of Florida" pursuant to the provisions of § 775.01, F.S. 1971, which declares common law crimes to be of full force in this state in the absence of a specific statute on the subject. We disagree on this fundamental finding and therefore deem it unnecessary to discuss the factual issues which the circuit court considered viable and upon which he predicated his reversal of the court court's dismissal of the indictment.
Before continuing further, and to assist in lighting the path we take, we briefly define the offense as it existed at common law. We will more fully discuss it, infra; but for now, let it be said that it was the bare failure of a person with knowledge of the commission of a felony to bring the crime to the attention of the proper authorities.[2]
Now the facts. Petitioner was, at the times material herein, City Manager of the City of Pinellas Park, Florida. On or about the critical date herein, to wit: August 2, 1973, he was attempting to contact his assistant city manager, one Rutherford, and had been unable to do so by telephone. He drove to Rutherford's residence but though Rutherford's car was parked in front he was unable to raise him. He went around to the rear of the house looking for him and, at that time, noticed several plants growing in the rear yard which he suspected to be marijuana. He picked two leaves from two different plants and returned to his office. He contacted one T.W. Kelley, Captain of the Pinellas Park Police Department, to whom he related his findings. The two men then caused the plant samples to be chemically analyzed and their suspicions were confirmed.
Subsequently, Captain Kelley accompanied appellant back to Rutherford's house where they confronted Mr. Rutherford and accused him of the offense of which they suspected he was guilty. After some equivocation Rutherford finally indicated to them his guilt. In Mr. Rutherford's presence, then, appellant and Kelley uprooted a sufficient number of the aforesaid plants to constitute an aggregate of more than five grams of marijuana thus establishing the offense as felony possession of marijuana.
Thereafter, appellant requested Rutherford's resignation as assistant city manager, which Rutherford submitted, and then both appellant and Captain Kelley contacted Pinellas Park Police Chief Ernest Van Horn to whom they related all of the foregoing. The decision was then made by appellant, and concurred in by Chief Van Horn and Captain Kelley, that the matter *808 would be handled administratively as a internal affair, that they would avoid unfavorable publicity and dishonor to the City of Pinellas Park and that, to preclude further dishonor and disgrace to Rutherford and his family, no criminal prosecution would ensue.
Within several days thereafter appellant related the entire incident, together with a full disclosure of the decision aforesaid, to three city councilmen, the city clerk, six high level city officials, four lower level city officials, one newspaper editor, one newspaper reporter and one prominent clergyman of the city. Each of these seventeen persons filed an identical affidavit herein in which he acknowledges his full and complete knowledge of the matter and each of whom made the following sworn statement:
"Douglas J. Holland ... advised me what action was taken in this matter, at which time I told him in effect that I felt he had taken the appropriate steps and agreed that this was good so as to avoid unfavorable publicity and dishonor to the City of Pinellas Park and to further avoid any dishonor to Rutherford's career and disgrace and serious harm to his family. I certainly felt that we should not proceed to cause the arrest of Mr. Rutherford."
As hereinabove noted, we chose to decide this case on the fundamental issue of whether misprision of felony is a crime in Florida. We parenthetically insert here, however, that had we not so chosen it is difficult to conclude from the foregoing facts, which are not in dispute, that appellant Holland failed to bring knowledge of the commission of a felony to the "proper authorities" or was guilty of concealing such knowledge in any respect.
In any case, we now get on to the merits of the question we decide today. We begin by pointing out that almost every state in the United States has adopted the Common Law of England to some extent.[3] Many of these states have done so by constitutional or statutory provisions similar to ours. But the nearly universal interpretation of such provisions is that they adopt the common law of England only to the extent that such laws are consistent with the existing physical and social conditions in the country or in the given state.[4]
To some degree Florida courts have discussed this principle in other contexts. In Duval v. Thomas[5], for example, our Supreme Court said:
"[W]hen grave doubt exists of a true common law doctrine ... we may, as was written in Ripley v. Ewell, [Fla. 1952, 61 So.2d 420] exercise a `broad discretion' taking `into account the changes in our social and economic customs and present day conceptions of right and justice.' It is, to repeat, only when the common law is plain that we must observe it."
Moreover, our courts have not hesitated in other respects to reject anachronistic common law concepts.[6]
Consonant with this, therefore, we think that the legislature in enacting § 775.01, supra, recognized this judicial precept and intended to grant our courts the discretion necessary to prevent blind adherence to those portions of the common law which are not suited to our present conditions, our public policy, our traditions or our sense of right and justice.
With the foregoing as a predicate, we now consider the history of the crime of misprision of felony and whether the reasons *809 therefor have ceased to exist, if indeed they ever did exist, in this country. The origin of the crime is well described in 8 U. of Chi.L.Rev. 338, as follows:
"[M]isprision of felony as defined by Blackstone is merely one phase of the system of communal responsibility for the apprehension of criminals which received its original impetus from William I, under pressure of the need to protect the invading Normans in hostile country, and which endured up to the Seventeenth Century in England. In order to secure vigilant prosecution of criminal conduct, the vill or hundred in which such conduct occurred was subject to fine, as was the tithing to which the criminal belonged, and every person who knew of the felony and failed to make report thereof was subject to punishment for misprision of felony. Compulsory membership in the tithing group, the obligation to pursue criminals when the hue and cry was raised, broad powers of private arrest, and the periodic visitations of the General Eyre for the purpose of penalizing laxity in regard to crime, are all suggestive of the administrative background against which misprision of felony developed. With the appearance of specialized and paid law enforcement officers, such as constables and justices of the peace in the Seventeenth Century, there was a movement away from strict communal responsibility, and a growing tendency to rely on professional police... ."
In short, the initial reason for the existence of misprision of felony as a crime at common law was to aid an alien, dictorial sovereign in his forcible subjugation of England's inhabitants. Enforcement of the crime was summary, harsh and oppressive; and commentators note that most prosecutors in this country long ago recognized the inapplicability or obsolescence of the law and its harshness in their contemporary society by simply not charging people with that crime.[7] This very case, in fact, serves well to illustrate the potential mischief of the charge and the possible discriminatory, oppressive or absurd results thereof. For example, should not Captain Kelley have been indicted too? Or Chief Van Horn? And if not, why only Holland? Or, perhaps, should not the three city councilmen have been indicted? Or the city clerk? Or the other city officials, the newspaper people or the clergyman in their turn? Should there be fully nineteen indictments herein, or any given lesser number, when for aught we know the principal felon hasn't even been charged?
Many courts faced with this issue have also found, though with varying degrees of clarity, that the reasons for the proscription of this crime do not exist. Moreover, as early as 1822 in this country Chief Justice John Marshall stated in Marbury v. Brooks.[8]
"It may be the duty of a citizen to accuse every offender, and to proclaim every offense which comes to his knowledge; but the law which would punish him in every case, for not performing this duty, is too harsh for man."
In Michigan, whose constitution contains a provision incorporating common law crimes in a fashion similar to our Florida Statute § 775.01, supra, the Supreme Court of that state resolved a situation analogous to ours by the following holding:[9]
"The old-time common-law offense of misprision of felony, short of an accessory after the fact ..., is not now a substantive offense and not adopted by the Constitution, because wholly unsuited *810 to American criminal law and procedure as used in this State."
The Supreme Judicial Court of Massachusetts,[10] without actually reaching the point of whether misprision was a part of Massachusetts law, nevertheless stated that:
"[N]ot every principle of the English common law became part of the common law of Massachusetts. Some doctrines were judged inapplicable to the `new state and condition' of the settlers in this country. .. ."
The court then suggested that if squarely faced with the question they would either declare misprision to be such an inapplicable doctrine or else interpret into that crime the element of evil motive, as was done by the Vermont court in State v. Wilson.[11]
We agree with Chief Justice Marshall and with the above cases and commentaries that the crime of misprision of felony is wholly unsuited to American criminal law. We are unable to agree with the course followed in Wilson, supra, because we think we should not alter the elements of common law misprision merely to make it coalesce with Florida law.[12] Rather, we meet the question head-on. While it may be desirable, even essential, that we encourage citizens to "get involved" to help reduce crime, they ought not be adjudicated criminals themselves if they don't. The fear of such a consequence is a fear from which our traditional concepts of peace and quietude guarantee freedom. We cherish the right to mind our own business when our own best interests dictate. Accordingly, we hold that misprision of felony has not been adopted into, and is not a part of, Florida substantive law.
Certiorari is granted, the decision of the circuit court is hereby quashed, and the cause is remanded with directions that the petitioner be ordered discharged.
HOBSON and GRIMES, JJ., concur.
NOTES
[1] The order of dismissal was predicated on affidavits and documents filed pursuant to the criminal law version of "summary judgment" proceedings as provided for by Rule 3.190 (c)(4), RCrP.
[2] See I Bishop, New Criminal Law § 699 (8th ed. 1892); I Chitty, A Practical Treatise on the Criminal Law 3 (1819); 20 The American and English Encyclopedia of Law 803-04 (2d ed. 1902).

We note here that misprision of felony does exist by statute under Federal law. 18 U.S.C. § 4 (1970). However, this statutory crime of misprison includes the added element of a positive act of concealment. Neal v. United States, 102 F.2d 643 (CCA 8th 1939); Bratton v. United States, 73 F.2d 795 (CCA 10th 1934). In Florida, this type of behavior is proscribed by §§ 776.03 and 843.14, F.S. 1971, which respectively condemn such conduct as "accessory after the fact" or "compounding a felony."
[3] See 15A C.J.S. Common Law § 11 (1967).
[4] See 15A C.J.S. Common Law §§ 1, 13 (1967).
[5] (Fla. 1959), 114 So.2d 791, 795.
[6] See, e.g., Hargrove v. Town of Cocoa Beach (Fla. 1957), 96 So.2d 130; Morgenthaler v. First Atlantic National Bank (Fla. 1955), 80 So.2d 446; Waller v. First Savings & Trust Co. (1931), 103 Fla. 1025, 138 So. 780; Wax v. Wilson (Fla.App.3d, 1958), 101 So.2d 54.
[7] See, e.g., 1 Wharton, Criminal Law § 289 (12th ed. 1932); 9 Halsbury, The Laws of England § 580, n. 1 (Hailsham ed. 1933); Stephen's Digests of Criminal Law, Articles 156, 157.
[8] 20 U.S. (7 Wheat.) 556, 575-576, 5 L.Ed. 522.
[9] People v. Lefkovitz (1940), 294 Mich. 263, 293 N.W. 642, 643.
[10] Commonwealth v. Lopes (1945), 318 Mass. 453, 61 N.E.2d 849.
[11] (1907), 80 Vt. 249, 67 A. 533.
[12] Moreover, as noted in n. 7, supra, such offense, with the added element of positive acts of concealment, is proscribed as "accessory after the fact" by § 776.03, supra.