592 S.E.2d 302

**The STATE, Respondent,**

v.

**Dorothy SMITH, Petitioner.**

No. 25771.

Supreme Court of South Carolina.

Heard June 10, 2003.

Decided Jan. 20, 2004.

Assistant Appellate Defender Eleanor Duffy Cleary, of Columbia, for Petitioner.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, and Assistant Deputy Attorney General Charles H. Richardson, all of Columbia; and Solicitor J. Gregory Hembree, of Conway, for Respondent.

Justice PLEICONES:

We granted certiorari to review a decision of the Court of Appeals holding that the circuit court properly denied petitioner's motion for a directed verdict on the charge of misprision of felony. *State v. Smith,* 348 S.C. 601, 560 S.E.2d 430 (Ct.App.2002). We reverse.

## FACTS

The proprietor of a small rural grocery store was found dead in the store at about 2:30 p.m. The cash register and the victim's purse were missing. The victim's pastor had been at the store that afternoon from about 1:45 p.m. to 2:15 p.m. He testified that petitioner's husband purchased several food items. When the pastor left the store, he observed petitioner and her husband eating in their car in the parking lot. Another customer, who had arrived as the pastor was leaving, testified that petitioner and her husband, whom the customer recognized, were sitting in their car and eating while she was at the store.

Early the next morning, petitioner and her husband went to the victim's daughter's home, ostensibly to pay their respects. During this visit, petitioner attempted to mislead the daughter into believing that petitioner and her husband had been at the store hours, rather than minutes, before the murder and armed robbery occurred. The daughter was suspicious, and called the pastor. When he arrived at the daughter's home, he recognized the couple and discreetly telephoned the police. The pastor then told the couple the police wished to speak to the 'witnesses' at the store, and the three left the daughter's home.

After speaking briefly with officers at the store, petitioner and her husband agreed to be interviewed at the police substation. They were interviewed separately, and it is petitioner's statements during this initial interview that gave rise to the misprision charge that she intentionally misled the police. Petitioner told the police that she and her husband stopped at the store to get a few food items, that he went in and bought groceries, returned to the car, then reentered the store and got some cigarettes. Petitioner told the police that she and her husband then drove away from the store.

That evening, following the interviews, officers executed a search warrant at the couple's home. Petitioner returned to the sheriff's department with the officers and gave a statement after being read her *Miranda* rights. In this second statement, petitioner maintained that she and the husband stopped at the store to get food. Her husband purchased the food, and when he returned to the car they sat there briefly before her husband reentered the store to get cigarettes. While petitioner's husband was in the store, petitioner heard a "pow" and looked towards the store. Petitioner observed her husband coming out of the front door carrying the cash register and "an object with a long strap." [1] Her husband placed the items in the back of the car; they sat in the parking lot and ate some food, then drove home.

## ISSUE

Whether the Court of Appeals erred in holding that the trial court properly denied petitioner's directed verdict motion?

---

1. Inferentially this was the victim's handbag.

## ANALYSIS

■ Petitioner contends she was entitled to a directed verdict on the misprision charge. We agree. Misprision is:

[A] criminal neglect either to prevent a felony from being committed or to bring the offender to justice after its commission, but without such previous concert with, or subsequent assistance of, him as will make the concealer an accessory before or after the fact.

*State v. Carson,* 274 S.C. 316, 262 S.E.2d 918 (1980).

As this Court acknowledged in *State v. Carson,* there are situations where the defendant's 5th amendment privilege against self-incrimination will bar a misprision prosecution. The privilege acts as a bar where the information concealed would incriminate the defendant as an accessory or principal in the underlying felony. *Id.*

■ The State contends that because petitioner did not invoke her 5th amendment "right to remain silent" when first questioned by police but instead chose to tell officers only part of the story, she waived any privilege. The State misunderstands the relationship between the privilege against self-incrimination and the right of the State to prosecute an individual for misprision. The issue is not whether the Constitutional privilege was explicitly invoked, but rather whether the individual sought to be charged had a reasonable belief at the time the concealment occurred that revealing the information could lead to her criminal prosecution. Where the information concealed exculpates the individual questioned, the 5th amendment privilege does not bar a misprision charge. *State v. Carson, supra.* Where, however, the speaker reasonably believes [2] that the information concealed could be used against her in a criminal prosecution as an accessory or principal in the underlying felony, then the privilege bars a misprision prosecution. *Id.*

■ We find the evidence here is susceptible of the inference that petitioner and her husband sat in the parking lot, waiting for the "coast to clear," before he entered the store

---

**2.** This standard is taken from the test used where a witness actively invokes his privilege against self-incrimination. *See Kastigar v. United States,* 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972).

intent on committing an armed robbery. Inferentially, petitioner acted as lookout and getaway car driver. In fact, an investigator testified at trial that he believed that petitioner participated in the crimes with 'knowledge aforethought.'

The Court of Appeals held that petitioner could not reasonably have feared prosecution as an accessory after the fact because she was present at the scene. As a brief review of the state of the law on accessory after the fact will show, no lawyer would have been unreasonable in advising petitioner she could face this charge, nor was it unreasonable for petitioner, a layperson, to fear that her acts after the murder and armed robbery could result in her criminal prosecution. *See State v. Collins*, 329 S.C. 23, 495 S.E.2d 202 (1998) (from 1981 until 1998 only, "mere presence" at the scene precluded prosecution as an accessory after the fact). The reasonableness of petitioner's belief in the possibility of an accessory charge is amply demonstrated by the fact she was indicted and tried for that offense in this proceeding. Petitioner was granted a directed verdict on this charge, however, because the murder and armed robbery occurred before *State v. Collins* was decided, and the trial judge held that petitioner's presence at the scene precluded an accessory conviction.

The Court of Appeals, without explanation, held petitioner had no reasonable belief that she could be charged as a principal. We disagree. As noted above, the record supports an inference that petitioner may have acted as lookout and getaway driver. Accordingly, petitioner had a reasonable belief that full disclosure of the facts surrounding the crimes could have exposed her to prosecution as a principal. *See State v. Gates*, 269 S.C. 557, 238 S.E.2d 680 (1977) (getaway driver guilty as principal in armed robbery).

Petitioner's belief that revealing all she knew about the crimes could expose her to prosecution as an accessory after the fact or as a principal in the murder and armed robbery of the grocery store proprietor was reasonable. She was therefore entitled to a directed verdict on the misprision charge because her concealment of inculpating information was protected by her privilege against self-incrimination. *State v. Carson, supra.*

## CONCLUSION

Petitioner was entitled to a directed verdict. The decision of the Court of Appeals is

REVERSED.

MOORE, WALLER and BURNETT, JJ., concur. TOAL, C.J., dissenting in a separate opinion.

Chief Justice TOAL:

I respectfully dissent, as I find that neither of the two exceptions to the misprision of a felony statute, which are grounded in the Fifth Amendment protection against self-incrimination, applies in this case. Therefore, I would affirm the Court of Appeals' decision to uphold petitioner's conviction of misprision of a felony.

When reviewing the trial judge's denial of a directed verdict, this Court must view the evidence in the light most favorable to the State. *State v. McHoney*, 344 S.C. 85, 544 S.E.2d 30 (2001).

This Court has described the offense of misprision of a felony as the criminal neglect to either prevent the commission of a felony or to bring a felon to justice. A person commits misprision of a felony only if he makes some positive act of concealment. Therefore, the offense does not contemplate mere silence or a failure to come forward. A person cannot be convicted of misprision of a felony if his act of concealment makes him an accessory before or after the fact. *State v. Carson*, 274 S.C. 316, 318, 262 S.E.2d 918, 920 (1980) (citation omitted).

This Court explained how the privilege against self-incrimination protects the concealer from being convicted of misprision of a felony:

[w]hile it is true the privilege sometimes works to bar prosecution for misprision, this is *only* when the statements concealed would incriminate the defendant as an accessory or principal in the protected felony.

*Carson*, 274 S.C. at 319, 262 S.E.2d at 920 (emphasis added). Therefore, in order for this Court to find that the Fifth Amendment protects petitioner's statements to the SLED

agent, we also must conclude that one of the exceptions applies: petitioner must either have been an accessory after the fact or the principal actor of the offense.

The trial judge correctly ruled that petitioner could not be convicted of accessory after the fact because on the date of her offense, December 30, 1996, South Carolina law required that a person could only be convicted of accessory after the fact if she was absent from the crime scene. *See State v. Collins,* 329 S.C. 23, 495 S.E.2d 202 (1998).[3]

In her statement made to a SLED agent, petitioner admitted she heard a gunshot inside the store and saw her husband get into the car with a cash register and "an object with a long strap." This statement implicates only petitioner's husband as the principal actor of the crime.

Therefore, in my opinion, the Fifth Amendment privilege does not protect petitioner's statement to the SLED agent because she could not have been prosecuted as an accessory after the fact or a principal actor in the crime.

In my view, the majority inappropriately injects a subjective test into the misprision-Fifth Amendment analysis. The majority holds that the Fifth Amendment protects the concealer if "the individual sought to be charged had a reasonable belief at the time the concealment occurred that revealing the information could lead to her criminal prosecution." The majority bases this subjective analysis on *Kastigar v. United States,* 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972), where a witness affirmatively invoked his Fifth Amendment right to remain silent.

In the case at hand, petitioner never invoked her Fifth Amendment right; rather, she affirmatively concealed information from the investigator. She elected to speak to the investigator, and from the moment she elected to speak to the investigator, she no longer was afforded Fifth Amendment protection *unless* she was an accessory after the fact or the

---

3. From 1981 until the date of the *Collins* opinion, January 5, 1998, a defendant could not be prosecuted for accessory after the fact if she was present at the crime scene. The Court refused to retroactively apply the new rule that an actor's presence at the crime scene did *not* preclude an accessory after the fact conviction to crimes committed during this seventeen-year period.

principal actor of the crime.[4]  As the United States Supreme Court has duly noted, there is no constitutional right to lie. *United States v. Apfelbaum*, 445 U.S. 115, 117, 100 S.Ct. 948, 950, 63 L.Ed.2d 250 (1980) (proper invocation of the Fifth Amendment privilege against compulsory self-incrimination allows a witness to remain silent, but not to swear falsely).

In my opinion, this Court cannot employ a subjective test that essentially condones a suspect lying to the police if she "reasonably believes" that if she told the truth, she might be subjected to criminal prosecution.  This test extends well beyond our *Carson* test for misprision of a felony and is inconsistent with the analysis we employ for inculpatory statements.[5]

In my view, the majority's decision inappropriately cloaks the *Carson* analysis with a new subjective test that exceeds the boundaries of our jurisprudence in this area of the law. In effect, the majority opinion encourages a suspect to lie to the police, thoroughly impeding a police investigation, and then hide behind a subjective "reasonableness" standard.

Based on the reasoning above, especially considering that we must view the evidence in the light most favorable to the State, I would hold that petitioner's attempt to conceal her husband's involvement in the robbery and murder of the convenience store clerk is not protected by the Fifth Amendment according to our *Carson* test.

---

4.  I respectfully disagree with the manner in which the majority stretches its new, subjective test, in conjunction with its presumptuous inference that petitioner may have been a principal actor of the crime, to conclude that petitioner is not guilty of misprision of a felony.

5.  For example, we employ an objective analysis in determining whether the suspect is in police custody when she elects to give an inculpatory statement.  *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *see Bradley v. State*, 316 S.C. 255, 257, 449 S.E.2d 492, 493–494 (1994) (the custodial determination is an objective analysis based on whether a reasonable person would have concluded that he was in police custody).