**SHEVRON PERCIVAL, Appellant/Defendant**
**v.**
**PEOPLE OF THE VIRGIN ISLANDS, Appellee/Plaintiff**

S. Ct. Criminal No. 2013-0090
Supreme Court of the Virgin Islands
August 12, 2014

KELE ONYEJEKWE, ESQ., Appellate Public Defender, St. Thomas, USVI, *Attorney for Appellant.*

PAMELA R. TEPPER, ESQ., Assistant Attorney General, St. Thomas, USVI, *Attorney for Appellee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

## OPINION OF THE COURT

(August 12, 2014)

HODGE, *Chief Justice.* Shevron Percival was convicted of misprision of a felony under 14 V.I.C. § 13 for refusing to disclose the details of a killing he witnessed. Because there was insufficient evidence to find Percival guilty of this offense, we reverse Percival's conviction.

## I. STATEMENT OF RELEVANT FACTS AND PROCEDURAL POSTURE

On August 11, 2011, Christopher Rice was fatally shot at a housing complex on St. Croix. On August 15, 2011, the police took a suspect into custody for the killing. During the investigation, Virgin Islands police Detective Kirk Fieulleteau learned that a group of men, including Percival, were illegally gambling in the vicinity of the shooting. When Fieulleteau questioned Percival at the housing complex on August 18, 2011, Percival admitted to witnessing the killing, saying "yea, I been there, I see the whole thing, but I ain't telling you nothing, I ain't signing my name to nothing and you ain't putting [my] name on no paper, because I ain't making nobody call [me] a rat." Fieulleteau and another police officer questioned Percival a second time at police headquarters on August 29, 2011. At this second interview, Percival reiterated that he witnessed the killing but that he was not willing to disclose details about the incident because "[n]obody gon[na] say I is a rat." Percival was arrested on the charge of misprision of a felony on October 11, 2011.

Following a jury trial on April 16, 2013, Percival was found guilty of misprision of a felony. Before the jury was given its instructions and at the close of all evidence, Percival orally moved for a judgment of acquittal, which the Superior Court denied. Percival renewed his motion for judgment of acquittal, or in the alternative a new trial, on July 1, 2013, where he argued, among other things, that the People failed to prove he

189

concealed the murder.[1] On August 8, 2013, the Superior Court denied Percival's renewed motion without addressing whether the People had proved the element of concealment beyond a reasonable doubt. The Superior Court sentenced Percival to two years' incarceration during a hearing on September 19, 2013, which was memorialized in an October 10, 2013 judgment and commitment. Percival timely filed a notice of appeal on October 16, 2013. *See* V.I.S.CT.R. 5(b)(1).

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

This Court has appellate jurisdiction over "all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." V.I. CODE ANN. tit. 4, § 32(a). Because the Superior Court's October 10, 2013 judgment and commitment constitutes a final order, this Court has jurisdiction over this appeal. *See, e.g., Francis v. People*, 56 V.I. 370, 379 (V.I. 2012).

When reviewing the sufficiency of the evidence to support a conviction, this Court "must view the evidence in the light most favorable to the People, and affirm the conviction if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[2] *Webster v. People*, 60 V.I. 666, 678 (V.I. 2014) (quoting *Cascen v. People*, 60 V.I. 392, 401 (V.I. 2014)). We "review a trial court's denial of a motion for judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure *de novo.*" *People v. Thompson*, 57 V.I. 342, 349 (V.I. 2012) (citations omitted).

### B. Sufficiency of the Evidence

The People charged Percival with one count of misprision of a felony on September 13, 2011, for

> having knowledge of the actual commission of a felony, namely, the

---

[1] Although the docket reflects Percival renewed his Rule 29 motion on July 1, 2013, the motion was not included in the joint appendix, as required by V.I.S.CT.R. 24(a).

[2] At trial, the record reflects some confusion between the parties and the court as to whose favor the Superior Court must view the evidence. Irrespective of when the Rule 29 motion is made, the Superior Court must always view the evidence in the light most favorable to the People. *Webster*, 60 V.I. at 678.

murder of Christopher Rice, [and] willfully conceal[ing] it from proper authorities, to wit: by admitting to be[ing] present during the killing of Christopher Rice to police investigators; and refusing to provide information and/or cooperate with said police investigators in the investigation of the murder, in violation of Title 14 V.I.C. § 13.

On appeal, Percival argues that his due process rights were violated because the People failed to provide him with sufficient notice of the charged crime. Since the information clearly charged Percival with a violation of 14 V.I.C. § 13, providing express notice of the crime charged, we construe Percival's argument as contesting the sufficiency of the evidence proving that he is guilty of misprision of a felony.

 Misprision of a felony is a common law crime defined by Sir William Staunford in 1557 as occurring "when anyone learns or knows that another has committed treason or felony, and he does not choose to denounce him to the King or to his Council." Gabriel D. M. Ciociola, *Misprision of Felony and Its Progeny*, 41 BRANDEIS L.J. 697, 699 (2003) (quoting *Sykes v. Dir. of Pub. Prosecutions*, [1962] A.C. 528, 577 (H.L. 1961) (per Lord Denning) (citing a translation of Sir William Staunford, LES PLEES DEL CORON, cap. 39 (London 1557))); *see also State v. Biddle*, 32 Del. 401, 124 A. 804, 805 (1923) (common law misprision of a felony is defined as "the criminal neglect either to prevent a felony from being committed or to bring the offender to justice after its commission, but without such previous concert with or subsequent assistance of him as will make the concealor an accessory before or after the fact" (quoting *State v. Wilson*, 80 Vt. 249, 67 A. 533, 533 (1907))). Commentators suggest that such a law was necessary in feudal England to coerce citizens into complying with their duty of maintaining order within their communities, as modern day police forces were not yet in existence. Christopher Mark Curenton, *The Past, Present, and Future of 18 U.S.C. § 4: An Exploration of the Federal Misprision of Felony Statute*, 55 ALA. L. REV. 183, 183 (2003); *but see* P.R. Glazebrook, *Misprision of Felony-Shadow or Phantom?*, 8 AM. J. LEGAL HIST. 283, 288-89 (1964) (questioning the historical basis and actual existence of misprision of a felony). By the mid-1800s, the crime of misprision of a felony had become obsolete and, in 1967, England repealed the crime as

part of the Criminal Law Act.[3] *Pope v. State*, 284 Md. 309, 396 A.2d 1054, 1070 (1979) (citing Carl Wilson Mullis III, *Misprision of Felony: A Reappraisal*, 23 EMORY L.J. 1095, 1100-01 (1974)).

Even though by 1790 the crime of misprision of a felony had become virtually extinct in England, in the United States, misprision of a felony acquired new life when "[t]he first Congress of the United States enacted a statute imposing criminal penalties upon anyone who, 'having knowledge of the actual commission of [certain felonies,] shall conceal, and not as soon as may be disclose and make known the same to [the appropriate] authority.' " *Roberts v. United States*, 445 U.S. 552, 558, 100 S. Ct. 1358, 63 L. Ed. 2d 622 (1980) (quoting Act of Apr. 30, 1790, § 6, 1 Stat. 113). This statute lingers on in section 4 of title 18 of the United States Code, defining misprision of a felony as "[w]hoever, having knowledge of the actual commission of a felony cognizable by a court of the United States, conceals and does not as soon as possible make known the same to some . . . authority under the United States." 18 U.S.C. § 4. Federal prosecutions under § 4 are uncommon, with less than 1,000 cases dealing with misprision of a felony since the 1800s.[4]

■ On the other hand, the majority of state courts have rejected the common law crime of misprision of a felony as being "[in]compatible with our local circumstances and situation and our general code of laws and jurisprudence." *Pope*, 396 A.2d at 1071; *see also State v. Lefkovitz*, 294 Mich. 263, 293 N.W. 642, 643 (1940) (holding that misprision of felony is "wholly unsuited to American criminal law and procedure as used in this State") (collecting cases); *Holland v. State*, 302 So. 2d 806,

---

[3] Misprision of a felony was replaced with the offense of compounding, which criminalizes "withholding information with regard to certain offenses for consideration other than restitution." *Pope*, 396 A.2d. at 1070 (citing Carl Wilson Mullis III, 23 EMORY L.J. at 1100-01).

[4] Although we cannot say with certainty how many people have been charged under § 4, the relatively few cases discussing the crime requires us to draw the inference that misprision of a felony is not readily charged, and even fewer convictions obtained. *See Pope*, 396 A.2d at 1072 ("[I]n view of the numerous appeals in criminal causes spawned by present day procedures and rights afforded an accused, it is remarkable indeed that, if convictions upon charge of [misprision of a felony] have occurred, the present case was the first in which an appeal was filed. We think that it is a fair inference that the crime has been seldom charged, and, if charged, has resulted in very few, if any convictions."). Furthermore, it is unclear how many convictions are the results of prosecutors' use of the crime as a bargaining tool during plea negotiations. *See* Daniel B. Yeager, *A Radical Community of Aid: A Rejoinder to Opponents of Affirmative Duties to Help Strangers*, 71 WASH. U. L.Q. 1, 34 (1993) (advocating in support of duty-to-aid and duty-to-report laws).

808 (Fla. Dist. Ct. App. 1974) (rejecting the common law crime of misprision of a felony as "not suited to our present conditions, our public policy, our traditions or our sense of right and justice"). Before the South Carolina Supreme Court accepted misprision of a felony as a common law crime without imposing limitations in *Carson v. People*, 274 S.C. 316, 262 S.E.2d 918, 920 (1980),[5] "[n]o court in the United States ha[d] been prepared to adopt the English doctrine in its simplicity, and hold that a mere failure to disclose knowledge of a felony is itself an offence." P.R. Glazebrook, *How Long, Then, is the Arm of the Law To Be?*, 25 MOD. L. REV. 801, 807 n.31 (1962). Those states that have included misprision of a felony in its common law jurisprudence have generally adopted a narrowed version of the English common law crime.[6] Ciociola, 41 BRANDEIS L.J. at 710-21.

▮ Additionally, only three state legislatures have enacted misprision of felony statutes, each of which has been subsequently repealed.[7] Ciociola, 41 BRANDEIS L.J. at 723. However, in the Virgin Islands,

---

[5] Even in South Carolina it is unclear whether something more than failing to alert the authorities to a felony is required to be found guilty of misprision of a felony, as the Supreme Court highlighted the fact that the defendant "concealed valuable information from the investigating officers. . . . constitut[ing] the common law offense of misprision of felony." *Carson*, 262 S.E.2d at 920. Since *Carson*, South Carolina's attorney general has issued an opinion stating that "mere silence or failure to come forward is not enough to constitute misprision; there must be some positive act of concealment of the felony." Ciociola, 41 BRANDEIS L.J. at 720-21 (citing 1990 Ann. Rep. & Official Op. of the Att'y Gen. of S.C. 91 (Mar. 5, 1990) (Op. No. 90-28)). This is further supported by Chief Justice Toal's dissenting opinion explaining that "[a] person commits misprision of a felony only if he makes some positive act of concealment. Therefore, the offense does not contemplate mere silence or a failure to come forward." *State v. Smith*, 357 S.C. 182, 592 S.E.2d 302, 305 (2004) (remanding case for entry of a directed verdict because defendant's "concealment of inculpating information was protected by her privilege against self-incrimination" (citing *Carson*, 262 S.E.2d 918)) (Toal, C.J., dissenting).

[6] In Vermont the offense includes a *mens rea* requirement, *Wilson*, 67 A. at 534 ("[T]he motive prompting the neglect of a misprision must be in some form evil as respects the administration of justice."). In Delaware a *mens rea* of willfulness was required, *Biddle*, 124 A. at 805. The Massachusetts Supreme Court held that even if misprision of a felony were a crime in that state, which it declined to decide, it would require proof of "an evil motive to prevent or delay the administration of justice." *Commonwealth v. Lopes*, 318 Mass. 453, 61 N.E.2d 849, 851-52 (1945). Rhode Island has also recognized misprision of a felony as a common law crime in *State v. Flynn*, 100 R.I. 520, 217 A.2d 432, 433 (1966), but has yet to address the crime's elements.

[7] The three states were Maine, New Jersey, and Louisiana. Miriam Gur-Arye, *A Failure to Prevent Crime — Should It Be Criminal?*, 20-2 CRIM. JUSTICE ETHICS 3, 5 n.32 (2001) (citing

misprision of a felony is still a chargeable crime, codified in 14 V.I.C. § 13, and stating in its entirety that "[w]hoever, having knowledge of the actual commission of a felony, willfully conceals it from the proper authorities, shall be fined not more than $500 or imprisoned not more than 3 years, or both." Percival argues that § 13 is unconstitutionally vague in violation of the due process clause of the Fourteenth Amendment because it does not "define the criminal offense with any definiteness." (Appellant's Br. 9.) Thus, we must carefully analyze § 13 to determine whether it adequately defines a criminal offense.

When interpreting a statute, we look first to the plain meaning of its language and attempt to construe it in a way that would not "result in injustice or absurd consequences." *Brady v. Gov't of the V.I.*, 57 V.I. 433, 442-43 (V.I. 2012) (quoting *Farrell v. People*, 54 V.I. 600, 610 (V.I. 2011)). "If the language is ambiguous, we will proceed to examine the legislative history of the statute and its purpose to ascertain if the interpretation was within the [L]egislature's intent." *Sonson v. People*, 59 V.I. 590, 598 (V.I. 2013) (citing *Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229, 236 n.3, 130 S. Ct. 1324, 176 L. Ed. 2d 79 (2010)).

We do not find § 13 to be ambiguous or vague. *See Thomas v. V.I. Bd. of Land Use Appeals*, 60 V.I. 579, 595 (V.I. 2014) (language is "ambiguous" when it "is susceptible to multiple interpretations by a reasonable person"). Section 13 can only be interpreted to prohibit any action taken with the intent to conceal a felony from the proper authorities. The word "it" from the phrase, "[w]hoever, having knowledge of the actual commission of a felony, willfully conceals *it* from . . ." must refer to "commission of a felony," and not, as the People argue, the word "knowledge." 14 V.I.C. § 13 (emphasis added). The first phrase clearly specifies the type of person targeted by the statute: persons who know that a felony has been committed. *Id.* The second phrase of § 13 specifies what those persons must do in order to be convicted under § 13: willfully conceal the felony from the authorities. *Id.* The third phrase then lays out the penalty for this offense.

■ Reading § 13 to criminalize "the mere possession of certain knowledge — knowledge possessed accidentally and undesired —

Jack Wenik, *Forcing the Bystander to Get Involved: A Case for a Statute Requiring Witnesses to Report Crime*, 94 YALE L.J. 1787, 1792 n.42 (1985)).

knowledge which may indeed have been acquired through some malevolent person" goes against the plain meaning of § 13. Glazebrook, 25 MOD. L. REV. at 811. Criminalizing the possession of knowledge could lead to unintended, unjust, and undesirable consequences, such as the prosecution of an innocent bystander who witnessed a felony but decided not to report it out of anxiety, apathy, or fear. *See Gilbert v. People*, 52 V.I. 350, 356 (V.I. 2009) ("A statute should not be construed and applied in such a way that would result in injustice or absurd consequences.") It would also allow the People to prosecute the victim of felonious conduct, for example, a sexual assault victim, for not coming forward and reporting the trauma they had endured. *See Holland*, 302 So. 2d at 809 (the possible consequences of adopting the all-encompassing common law crime of misprision of a felony "illustrate the potential mischief of the charge and the possible discriminatory, oppressive or absurd results thereof"); *see also* Susan J. Hoffman, *Statutes Establishing a Duty to Report Crimes or Render Assistance to Strangers: Making Apathy Criminal*, 72 KY. L.J. 827, 843 n.97 (1984) (other states that have a misprision of a felony statute or a duty to report statute expressly exempt victims from the duty to report, e.g. "[t]he Rhode Island statute's reporting requirement applies to 'any person, other than the victim' " (quoting R.I. GEN. LAWS § 11-37-3.1)).[8] The plain language of § 13 does not support such a broad, all-encompassing interpretation that would surely lead to such absurd results. Instead, we agree with Chief Justice John Marshall, who reasoned that "[i]t may be the duty of a citizen to accuse every offender and to proclaim every offense which comes to his knowledge; but the law which would punish him in every case for not performing this duty is too harsh from man." *Marbury v. Brooks*, 20 U.S. 556, 575-76, 5 L. Ed. 522 (1822); *see Holland*, 302 So.2d at 809 ("While it may be desirable, even essential, that we encourage citizens to 'get involved' to help reduce crime, they ought not be adjudicated criminals themselves if they don't. . . . We cherish the right to mind our own business when our best interests dictate."). Therefore, we hold that § 13

---

[8] Arguably, a "duty to report" statute differs from a misprision of a felony statute because the purpose behind a duty to report statute "is to prevent the completion of the crime and to rescue the victim" whereas the purpose of a misprision of a felony statute is to garner assistance in apprehending criminals. Gur-Arye, 20-2 CRIM. JUSTICE ETHICS at 5. But exemptions from the "duty to report" statutes are examples of how to ensure that victims of violent crimes are not unjustly prosecuted, leading to further trauma.

unambiguously criminalizes only the willful concealment of a felony from the authorities.

■ Our interpretation of § 13's plain language finds strong support in its legislative history. In 1957, the Virgin Islands Legislature adopted § 13, which is based on the federal misprision of a felony statute, thus making it appropriate for us to consider federal court interpretations of 18 U.S.C. § 4.[9] *Nicholas v. People*, 56 V.I. 718, 734-35 (V.I. 2012) (relying on other courts' interpretations of a nearly identical federal statute to interpret section 922 of title 14 of the Virgin Islands Code); *In re Disbarment of Plaskett*, 56 V.I. 441, 447 (V.I. 2012); *Brady v. Cintron*, 55 V.I. 802, 815-16 (V.I. 2011) (relying on Indiana's interpretation of a statute with language almost identical to that in a Virgin Islands statute). Importantly, the federal and Virgin Islands statutes have substantially similar language. In the Virgin Islands, an individual is guilty of misprision of a felony if he has "knowledge of the actual commission of a felony, [and] willfully conceals it from the proper authorities." 14 V.I.C. § 13. Under the federal statute, an individual is guilty of misprision of a felony if he has "knowledge of the actual commission of a felony cognizable by a court of the United States, [and] conceals and does not as soon as possible make known the same to [the proper] authority." 18 U.S.C. § 4.

■■ Despite the few federal cases discussing misprision of a felony, all federal circuits have heard at least a handful of cases dealing with § 4, and the majority of courts require the prosecution to prove that the

---

[9] Misprision of a felony was a crime in the Virgin Islands under the 1921 Codes. In 1957, the Virgin Islands Legislature adopted the crime of misprision of a felony as part of the Virgin Islands Code, and, although the Supreme Court of the United States had not yet heard a case based on 18 U.S.C. § 4, other federal courts had interpreted the federal statute as early as 1939. *Neal v. United States*, 102 F.2d 643, 646 (8th Cir. 1939); *see Rodriguez v. Bureau of Corr.*, 58 V.I. 367, 380 (V.I. 2013) ("[W]here a Virgin Islands statute is patterned after a statute from another jurisdiction, the borrowed statute shall be construed to mean what the highest court from the borrowed statute's jurisdiction, *prior* to the Virgin Islands enactment, construed the statute to mean." (citing *Chinnery v. People*, 55 V.I. 508, 519 n.6 (V.I. 2011) (emphasis in original))). As the Virgin Islands statute differs slightly from its federal counterpart, we may infer that the Legislature was aware of how the federal courts were interpreting § 4 and took steps to change § 13 where it deemed necessary. *See Sonson*, 59 V.I. at 598 (we assume "that the [L]egislature's intent is manifested through the ordinary meaning of the words chosen") (collecting cases); *cf. Tyson v. People*, 59 V.I. 391, 415 (V.I. 2013) (holding that the Legislature intended the historical common law interpretation of 14 V.I.C. § 922 because it has remained substantially unchanged since its adoption).

defendant took some action to aid or protect the perpetrator of the underlying felony.[10] *Branzburg v. Hayes*, 408 U.S. 665, 696 n.36, 92 S. Ct. 2646, 33 L. Ed. 2d 626 (1972) (holding that a conviction under § 4 "require[s] both knowledge of a crime and some affirmative act of concealment or participation" (collecting cases)). Like the federal statute, the Virgin Islands statute also requires that the defendant take some action to conceal the felony. *Compare* 14 V.I.C. § 13 ("willfully conceals it") *with* 18 U.S.C. § 4 ("conceals . . . the same"). Courts have interpreted the word "conceal" in the federal statute to require evidence that the defendant took some affirmative act to prevent the authorities from discovering the felony. *United States v. Adams*, 961 F.2d 505, 508 (5th Cir. 1992) ("[T]he defendant must commit an *affirmative* act to prevent discovery of the earlier felony." (emphasis in original)); *United States v. Goldberg*, 862 F.2d 101, 104 (6th Cir. 1988) ("Mere knowledge of the commission of the felony or failure to report the felony, standing alone, is insufficient to support a conviction for a misprision of a felony."); *United States v. Sampol*, 636 F.2d 621, 653, 204 U.S. App. D.C. 349 (D.C. Cir. 1980) ("Misprision basically requires knowledge of the commission of a felony, and wilful concealment from the authorities by some affirmative act."); *Miller v. United States*, 230 F.2d 486, 490 (5th Cir. 1956) (noting "heavy burden of showing a concealment and affirmative acts" under § 4); *Neal v. United States*, 102 F.2d 643, 649 (8th Cir. 1939) ("There must be . . . a concealment of something such as suppression of the evidence or other positive act."); *Bratton v. United States*, 73 F.2d 795, 797 (10th Cir. 1934) (the language of § 4 requires "some affirmative act of concealment, such as suppression of the evidence, harboring of the criminal, intimidation of witnesses, or other positive act designed to conceal from the authorities the fact that a crime had been committed."). The fact that the Virgin Islands Legislature added the specific statutory term "willful" before "conceal" indicates that it agreed with and accepted the federal courts' interpretation that the federal statute requires some

---

[10] The only circuit that has not adopted the element of an affirmative step is the First Circuit in *United States v. Caraballo-Rodriguez*, 480 F.3d 62, 70 (1st Cir. 2007) (refusing to "adopt the majority rule in the circuits that an affirmative act is required for a misprision offense"), to which Judge Torruella strongly dissented. *See id.* at 82 (Torruella, J., dissenting) ("*Every court* to have considered the issue, including the Supreme Court," has determined that "[t]he misprision statute imposes no legal obligation on citizens to report crime" and that an affirmative act is statutorily required by § 4. (emphasis in original) (collecting cases)).

affirmative act of concealment. *See Molloy v. Indep. Blue Cross*, 56 V.I. 155, 192 (V.I. 2012) (holding that willfulness must be proved by specific evidence and the "court cannot presume that the actions . . . were willful in the face of no evidence to support that conclusion"); BLACK'S LAW DICTIONARY 328 (9th ed. 2009) (defining "active concealment" as "concealment by words or acts of something that one has a duty to reveal").

▮ Despite strong similarities, 14 V.I.C. § 13 and 18 U.S.C. § 4 are not identical. Section 4 requires the prosecution to prove that the defendant failed to disclose the commission of a felony to the proper authorities,[11] whereas § 13 only requires the prosecution to prove that the defendant "willfully concealed [the commission of a felony] from the proper authorities." Thus, it is evident that in enacting § 13, the Legislature intentionally removed any language requiring failure to disclose the commission of a felony to the authorities as a necessary element of misprision of a felony, and intended to criminalize only the wilful *concealment* of a felonious action. *Compare* 14 V.I.C. § 13 *with* 18 U.S.C. § 4; *see* Ciociola, 41 BRANDEIS L.J. at 726 n.177 ("Since the statute only criminalizes willful concealment and does not mention failure to disclose, it would appear to reach only affirmative acts of concealment.").

▮ When deciding whether a defendant is guilty of misprision of a felony, many federal courts characterize the requirements as including: (1) the principal committed and completed the felony alleged; (2) the defendant had full knowledge of that fact; (3) the defendant failed to notify the authorities; and (4) the defendant took affirmative steps to conceal the crime. *United States v. Gebbie*, 294 F.3d 540, 544 (3d Cir. 2002) (citing *United States v. Cefalu*, 85 F.3d 964, 969 (2d Cir. 1996)); *Goldberg*, 862 F.2d at 104; *United States v. Hodges*, 566 F.2d 674, 675 (9th Cir. 1977). However, because the federal and Virgin Islands statutes differ on the material point of the obligation to notify authorities, we hold

---

[11] The federal statute requires the prosecution to prove that the defendant "conceal[ed] *and* [did] not . . . make known" the commission of a felony. 18 U.S.C. § 4 (emphasis added). Under general principles of statutory construction, the use of the word "and" indicates that concealment and disclosure to the authorities are two elements of the crime. *Bratton v. United States*, 73 F.2d 795, 797 (10th Cir. 1934) ("Some meaning must be given to the words 'conceal and.' If it should be held that a failure to disclose is itself a concealment, then a conviction may be had for failure to disclose without more, and the words 'conceal and' are thus effectively excised from the statute.").

that the three elements that the Virgin Islands Legislature clearly codified in §13 are: (1) the principal committed and completed the felony alleged; (2) the defendant had full knowledge of that fact; (3) the defendant took an affirmative step to conceal the crime.

 Applying these elements to the facts in this case it is apparent that the prosecution failed to present sufficient evidence meriting a conviction. The People introduced no evidence at trial indicating that Percival took an affirmative step to conceal a felony, and thus failed to prove the third element of the crime. In fact, Percival cannot as a matter of law be found guilty of misprision of a felony under these circumstances, as the charging document clearly states that the charge is based on the fact he "admitt[ed] to be[ing] present during the killing of Christopher Rice to police investigators; and refus[ed] to provide information and/or cooperate with said police investigators." The People did not allege that Percival engaged in any conduct that would constitute concealing the crime from the authorities, such as lying to the police, hiding evidence, intimidating a witness, or harboring the individual who committed the crime.[12] *See* Glazebrook, 25 MOD. L. REV. at 807 n.31. Percival was prosecuted only for refusing to provide the police with details of the killing, which is insufficient to support a conviction for misprision of a felony under §13.[13] *See United States v. Ciambrone*, 750 F.2d 1416, 1418 (9th Cir. 1984) (defendant who disclosed some but

---

[12] Percival argues that interpreting §13 to require some affirmative act makes misprision of a felony the equivalent of the crime of being an accessory after the fact. *See* 14 V.I.C. §12 ("[W]hoever, knowing that a crime or offense has been committed, receives, relieves, comforts or assists the offender in order to hinder or prevent his apprehension, trial or punishment, is an accessory after the fact."). However, while this may be true in some cases, for example when a defendant harbors the individual who committed the crime, it is not true in every case, such as lying to the police about witnessing the crime out of fear of retaliation. In this opinion we have no occasion to address whether conduct such as is alleged in the present case would constitute the offense of being an accessory after the fact.

[13] Percival also argues that because the alleged perpetrator of the crime was acquitted, there was insufficient evidence that a felony had been committed. The Superior Court correctly rejected this argument because the statute does not require that the perpetrator be convicted of a felony, only that the defendant knows that a felony was committed and, by an affirmative act, willfully conceals it. *See United States v. Davila*, 698 F.2d 715, 720-21 (5th Cir. 1983) (analogizing misprision of a felony to aiding and abetting, and holding that a misprision of a felony conviction could stand despite the acquittal of the principal of the underlying crime (citing *Standefer v. United States*, 447 U.S. 10, 100 S. Ct. 1999, 64 L. Ed. 2d 689 (1980))); *see also Fontaine v. People*, 56 V.I. 571, 586 (V.I. 2012) (upholding conviction for aiding and abetting where there was sufficient evidence that another person could have fired the fatal

not all of his knowledge of a counterfeiting operation did not commit "any greater concealment of the crime than would have occurred had the defendant said nothing and defendant's actions thus did not constitute misprision of felony"). Therefore, because misprision of a felony under § 13 requires some affirmative act to conceal the commission of a felony and the People did not present sufficient evidence of such an act, Percival's conviction cannot stand.

## III. CONCLUSION

Because the People failed to prove, beyond a reasonable doubt, that Percival committed misprision of a felony, we reverse the Superior Court's judgment.

---

shot (citing *Nanton v. People*, 52 V.I. 466, 486-87 (V.I. 2009))); *People v. Thompson*, 57 V.I. 342, 351 (V.I. 2012) ("[C]riminal convictions based on inconsistent verdicts should be up-held as long as there is sufficient evidence to support the convictions.").